

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 23, 2024**

**United States Bankruptcy Judge**

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| MATTHEW B. MARTORELLO, | § | Case No. 24-90016-mxm-11 |
| | § | |
| Debtor. | § | |

## ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTOR, THE LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, BIG PICTURE LOANS, LLC, EVENTIDE CREDIT ACQUISITIONS, LLC AND CERTAIN OTHER LIMITED PARTIES TO THE SETTLEMENT AGREEMENT

On October 23, 2024, the Court held a hearing (the "**Hearing**") on the *Motion to Approve Settlement Agreement and Release Between the Debtor, the Lac Vieux Desert Band of Lake Superior Chippewa Indians, Big Picture Loans, LLC, Eventide Credit Acquisitions, LLC and Certain Other Limited Parties to the Settlement Agreement* [ECF 29] ("**Motion**") filed by Matthew Brandon Martorello (the

-1-

"**Debtor**"[1] No objections were filed to the Motion in the Debtor's bankruptcy case or raised at the Hearing.[2]

The Motion seeks approval, under 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019, of a *Settlement Agreement and Release* dated October 17, 2024 ("**Settlement Agreement**") entered into by and among the Parties (as defined below).

The basic terms of the Settlement Agreement[3] are as follows: (i) the Tribe agrees to pay a "**Settlement Amount**" of $16,886,983.71 to Eventide Credit Acquisitions, LLC ("**Eventide**") consisting of a payment of $1.5 million upon the approval of the settlement by the Bankruptcy Court and the entry of the Condemnation Judgment (described below) by the LVD Tribal Court, a payment of $1 million on May 1, 2025, and the payment of $14,386,983.71 over forty-eight (48) months at 3.7% interest commencing November 1, 2024 (Settlement Agreement, ¶2); (ii) Eventide agrees to the entry of the Condemnation Judgment by the LVD Tribal Court, which also requires the Tribe to pay the Settlement Amount to Eventide on the same terms as the Settlement Agreement as "just compensation" for the condemnation of the Note and LSA (Settlement Agreement, ¶8);[4] (iii) the Tribal Parties consent to the jurisdiction of the Bankruptcy Court, and agree to broad waivers of sovereign immunity and the right to tribal exhaustion or litigation in a Tribal Forum, for matters arising out of or relating to the Settlement Agreement, (Settlement Agreement, ¶¶ 10-14); (iv) the Parties agree to broad mutual releases (the "**Mutual Releases**") between the Tribal

---

[1] Defined terms in the Motion are given the same meaning in this Order.

[2] The Official Committee of Unsecured Creditors filed an objection (the "**UCC Objection**") [see ECF 407 in Case No. 23-90007-mxm] to a companion motion for approval of the Settlement Agreement filed by Eventide Credit Acquisitions, LLC and BWH Texas, LLC (the "**Eventide/BWH Motion**") [see ECF 396 in Case No. 23-90007-mxm] and argued at the Hearing. To the extent not resolved through the language of the order granting the Eventide/BWH Motion in the Eventide Bankruptcy Case (defined *infra*), the pertinent portion of which language is also incorporated into paragraphs 10 and 11 of this Order, the UCC Objection was overruled.

[3] The general description of the Settlement Agreement contained herein is for illustrative purposes and subject, in its entirely, to the express terms of the Settlement Agreement, which are controlling over the general description of such agreement in this Order.

[4] Although referenced in both the Settlement Agreement and the Condemnation Judgment, Eventide is only entitled to a single satisfaction of the Settlement Amount and payments pursuant to the Condemnation Judgment shall be credited as payments pursuant to the Settlement Agreement, and vice versa.

Parties, on the one hand, and Eventide, the Debtor, and the other Eventide Limited Parties, on the other (Settlement Agreement, ¶9); (v) the collection of Payments under the Settlement Agreement and any enforcement thereof will be handled by Daniel J. Sherman, Esq., as an independent "**Collection Agent**," owing fiduciary duties to the Eventide Estate in this capacity, who will hold the funds in a separate IOLTA or other account pending the entry of appropriate orders by the Bankruptcy Court regarding the disbursement of funds (Settlement Agreement, ¶7); (vi) BPL will make information regarding the identity of its consumer borrowers ("**Consumer Borrowers**") available to a claims/noticing/balloting agent[5] for any of the Eventide Released Parties so that appropriate notices can be sent to the Consumer Borrowers in the bankruptcy cases filed by any of the Eventide Released Parties (Settlement Agreement, ¶17); and (vii) the applicable Parties will dismiss all Pending Actions in the Bankruptcy Court, District Court, and LVD Tribal Court, other than the Condemnation Action (in which the Condemnation Judgment shall be entered in accordance with the Settlement Agreement), with prejudice (Settlement Agreement, ¶16).

The Court has reviewed the Motion and Settlement Agreement, considered the Declaration of Martorello filed in support of the Motion, and taken judicial notice of the entire record in the Debtor's bankruptcy case and the jointly administered bankruptcy case of Eventide and BWH Texas, LLC (the "Eventide Bankruptcy Case"), including the record in the BPL Adversary Proceeding and the LVD Adversary Proceeding in the Eventide Bankruptcy Case. Based on the foregoing, the Court makes the following Findings of Fact and Conclusions of Law[6]:

### I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

[5] The Settlement Agreement provides that the Consumer Borrower Information will be made available to either American Legal Claims Services or Donlin Recano & Company, Inc., as the noticing agent for any of the Eventide Released Parties.

[6] Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact.

A. **Settlement Agreement**: The Parties have executed the Settlement Agreement attached hereto as **Exhibit A**. The Settlement Agreement is made by and among:

(i) The Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "**Tribe**"),

(ii) Big Picture Loans, LLC ("**BPL**"), and

(iii) Eventide Credit Acquisitions, LLC ("**Eventide**").

The Tribe, BPL, and Eventide are referred to herein and in the Settlement Agreement as the "**Settlement Parties**." The Settlement Agreement also includes the following:

(iv) the Debtor,

(v) Tribal Economic Development Holdings, LLC ("**TED**"),

(vi) Ascension Technologies, LLC ("**Ascension**,"),

(vii) BWH Texas, LLC ("**BWH**,"),

(viii) Loeb & Loeb, LLP ("**Loeb Firm**"),

(ix) Bernard R. Given, II ("**Given**"),

(x) Brophy & Bland, PLLC ("**BB Firm**"), and

(xi) Joseph Brophy ("**Brophy**").

The Debtor, TED, Ascension, BWH, Loeb Firm, Given, BB Firm, and Brophy are referred to herein and in the Settlement Agreement as the "**Limited Parties**." The Settlement Parties and Limited Parties are also referred to collectively as the "**Parties**."

B. **Good-Faith Negotiations:** The Court finds that the Settlement Agreement is the result of extensive, arm's-length bargaining among the Parties and represents a good-faith compromise and resolution of the matters settled. The Settlement Agreement is not the product of any collusion among the Parties, nor did the Parties negotiate the Settlement Agreement with any intent to prejudice persons or entities subject to the Settlement Agreement.

C. **Benefits of Settlement:** The Agreement provides, *inter alia,* the following concrete benefits to the Eventide bankruptcy estate and the Debtor's bankruptcy estate:

(i) **Settlement Amount:** The Settlement Agreement provides for the payment by the Tribe of $16,886,983.71 to Eventide consisting of a payment of $1.5 million upon the approval of the settlement by the Bankruptcy Court and the entry of the Condemnation Judgment by the LVD Tribal Court, a payment of $1 million on May 1, 2025, and the payment of $14,386,983.71 over forty-eight (48) months at 3.7% interest commencing November 1, 2024 (Settlement Agreement ¶2);

(ii) **Condemnation Judgment:** The Settlement Agreement provides for the entry of a Condemnation Judgment by the LVD Tribal Court, which also requires the Tribe to pay the Settlement Amount to Eventide on the same terms as the Settlement Agreement as "just compensation" for the condemnation of a Secured Promissory Note ("**Note**") and Loan and Security Agreement ("**LSA**") between BPL and Eventide dated September 20, 2020 (Settlement Agreement ¶8);

(iii) **Consent to Bankruptcy Court Jurisdiction and Waivers of Sovereign Immunity and Tribal Exhaustion**: In the Settlement Agreement, the Tribal Parties consent to the jurisdiction of the Bankruptcy Court, for matters arising out of or relating to the Settlement Agreement, and agree to broad waivers of sovereign immunity and the right to tribal exhaustion or litigation in a Tribal Forum for any matters pertaining to the interpretation or enforcement of the Settlement Agreement, Settlement Approval Order,

or Condemnation Judgment (Settlement Agreement ¶¶10-14);

(iv) **Mutual Releases**: The Settlement Agreement contains broad Mutual Releases between the Tribe, BPL, TED, and Ascension, on the one hand, and the Debtor, Eventide, BWH, Loeb Firm, Given, BB Firm, and Brophy, on the other, excluding any Claims under the Settlement Agreement, Settlement Approval Order, or Condemnation Judgment (Settlement Agreement ¶9);

(v) **Collection Agent**: The Settlement Agreement provides for the collection of Payments under the Settlement Agreement and any enforcement thereof by an independent Collection Agent, with fiduciary duties to the Eventide Estate (described below) (Settlement Agreement ¶7);

(vi) **Information for Bankruptcy Notices**: BPL will make information regarding the identity of its consumer borrowers ("**Consumer Borrowers**") available to a claims/noticing/balloting agent[7] for any of the Eventide Released Parties so that appropriate notices can be sent to the Consumer Borrowers in the bankruptcy cases filed by any of the Eventide Released Parties (Settlement Agreement ¶17); and

(vii) **Dismissal of Pending Actions**: The applicable Parties will dismiss all Pending Actions in the Bankruptcy Court, District Court, and LVD Tribal Court, other than the Condemnation Action (in which the Condemnation Judgment shall be entered in accordance with the Settlement Agreement),

---

[7] The Settlement Agreement provides that the Consumer Borrower Information will be made available to either American Legal Claims Services or Donlin Recano & Company, Inc., as the noticing agent for any of the Eventide Released Parties.

-6-

with prejudice (Settlement Agreement ¶16).

D. **<u>Additional Findings regarding Settlement Agreement</u>**: The Court further finds that:

(i) The Settlement Agreement resolves a number of disputed matters between the Tribal Parties, on the one hand, and the Eventide Released Parties, on the other, including the matters reflected in the Pending Actions;

(ii) All of the payments by the Tribe to Eventide pursuant to the Settlement Agreement and Condemnation Judgment are lawful, do not violate any state, federal or tribal law, and shall be deemed separate from and unrelated to BPL's consumer lending business and business operations;

(iii) The terms of the Settlement Agreement are lawful, do not violate any state, federal or tribal law, and binding upon, and enforceable against, the Parties;

(iv) The waivers of sovereign immunity, waivers of the right to tribal exhaustion or litigation in a Tribal Forum, and other waivers and consents by the Tribal Parties in paragraphs 10 through 14 of the Settlement Agreement are each valid, effective, and binding upon, and enforceable against, each of the Tribal Parties;

(v) The Eventide Estate's subsequent payment or distribution of any funds received from the Tribe or any of the other Tribal Parties pursuant to the Settlement Agreement, the Condemnation Judgment, or any enforcement thereof is lawful and does not violate any state, federal or tribal law;

(vi) The Tribe exercised its police and regulatory powers by filing a Complaint for Condemnation to condemn the Note and LSA; and,

(vii)         The Condemnation Judgment, upon its entry by the LVD Tribal Court pursuant to the Settlement Agreement, shall be binding in all respects on Eventide and its bankruptcy estate and entitled to comity and recognition by the Bankruptcy Court.

E. **Settlement Meets the Standard:** The Court is familiar with the claims and defenses asserted or that could have been asserted in the Pending Actions, or otherwise, which have been settled pursuant to the Settlement Agreement, and finds that the Settlement Agreement is fair, reasonable, and adequate within the parameters established in *In re Cajun Elec. Power Coop, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997), as more fully discussed below.

F. **Settlement is Reasonable and in the Best Interests of the Debtor's Estate:** The Debtor has demonstrated the exercise of prudent business judgment in connection with the Settlement Agreement. The Settlement Agreement falls above the lowest point in the range of reasonableness and is in the best interests of the beneficiaries of the Debtor's Estate.

G. **Notice and Opportunity to be Heard:** The form and means of the notice of the Motion that the Debtor and the Court (*via* CM/ECF electronic notice) provided to creditors and other interested parties is good and proper notice pursuant to the Bankruptcy Rules, Local Rules of this Court, and other applicable law, and is determined to be the best notice practicable under the circumstances, and no other or further notice is or shall be required. In particular, the Motion and the Settlement Agreement attached as an exhibit were served via the Court's Electronic Case Filing (ECF) System, where available, and via email and/or first class mail, postage prepaid to the parties listed on the Service List attached to the Motion, including but not limited to (a) the United States Trustee; (b) the Parties to the Settlement Agreement and their counsel; and (c) parties that have filed a notice of appearance in the Bankruptcy Case as reflected in the Certificate of Service

in the Motion. Notice of Hearing was also served, via the Court's Electronic Case Filing (ECF) System, where available, and via email and/or first class mail, postage prepaid upon the expanded list of parties reflected above.

H. **Mutual Releases Are Appropriate:** The Court finds that (1) all of the Claims released under the Settlement Agreement arise from, are related to, or derive from Eventide or transactions conducted with or on behalf of Eventide; and (2) the Mutual Releases are a mandatory condition of the Settlement Agreement, and without the Mutual Releases the Settlement Agreement will not be consummated; and (3) entry of this Order approving and implementing the Mutual Releases is necessary and appropriate in order to achieve the finality and repose contemplated by the Settlement Agreement, and that its entry is an appropriate exercise of the Court's sound discretion to facilitate settlements and promote the consensual resolution of disputes.

I. **Jurisdiction:** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This Court has subject matter jurisdiction over the Claims settled pursuant to 28 U.S.C. § 157. The Parties to the Settlement Agreement, including the Tribal Parties, have consented to the jurisdiction of the Bankruptcy Court for the purpose of entering this Settlement Approval Order.

J. **The Settlement:** The Fifth Circuit has set forth standards for bankruptcy courts to apply in analyzing whether proposed settlements are fair and equitable and in the best interests of the estate, including: (i) the probability of success in the litigation; (ii) the complexity and likely duration of the litigation, any attendant expense, inconvenience or delay, and possible problems collecting a judgment; (iii) the interests of creditors with proper deference to their reasonable views; and (iv) the extent to which the settlement is truly the product of arm's length negotiations

("***Cajun Electric* Factors**").

K.  Based on the foregoing, and for the reasons set forth on the record at the Hearing, which are incorporated by reference herein in their entirety, the Court finds and determines that the Settlement Agreement is fair, equitable, falls above the lowest point in the range of reasonableness, is in the best interest of the Debtor's estate, meets all of the *Cajun Electric* Factors, and that Debtor exercised prudent business judgment in connection therewith and satisfied the legal standards under the facts of this Bankruptcy Case. Accordingly, it is –

**ORDERED** as follows:

1.  **Motion**: The Motion is GRANTED in its entirety.

2.  **Settlement Agreement:** The Settlement Agreement is APPROVED in all respects, and the terms and conditions of the Settlement Agreement, including the terms and scope of the Mutual Releases, are incorporated in this Order as if fully stated herein.

3.  **Objections**: Any creditor or other party-in-interest that did not file or assert and serve a written objection to the Motion, or raise any objection at the Hearing to the Settlement Agreement, is conclusively deemed to have waived any objection they may have to the Motion, the Settlement Agreement, and the entry of this Settlement Approval Order.

4.  **Execution of Documents:** The Parties are authorized and directed to execute any and all documents and perform all acts as are necessary and appropriate to effectuate the Settlement Agreement.

5.  **Relief from Automatic Stay:** The automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code ("**Automatic Stay**"), to the extent it applies to the Condemnation Action, is hereby lifted to allow for the entry of the Condemnation Judgment as provided in the Settlement Agreement.

6. **Mutual Releases:** Any and all Claims released pursuant to the Settlement Agreement are deemed RELEASED, BARRED and FULLY WAIVED on the terms set forth in the Settlement Agreement.

7. **Consents and Waivers by the Tribal Parties**: The consents to the jurisdiction of the Bankruptcy Court, the waivers of sovereign immunity, the waivers of any jury trial right, and the waivers of the right to tribal exhaustion or litigation in a Tribal Forum contained in paragraphs 10 through 14 of the Settlement Agreement are valid, effective, and binding upon, and enforceable against, each of the Tribal Parties on the terms set forth in the Settlement Agreement.

8. **Notice:** In addition to service that will be effected by ECF on all parties that are registered to receive Notices of Filing in this Bankruptcy Case, the Debtor's counsel is directed to serve this Order: (i) by U.S. Mail, postage prepaid, on all parties reflected on the Service List attached to the Motion, and (ii) via email to the Parties to the Settlement Agreement and their counsel.

9. **Binding Effect:** The Settlement Agreement is binding upon the Parties and the heirs, representatives, executors, administrators, assigns, insurers, trustees, predecessors, and successors of the Parties, including without limitation, any post-confirmation person or entity created or assigned rights or powers under 11 U.S.C. §§ 1123 or 1129 or otherwise pursuant to a chapter 11 plan for the Debtor, Eventide, or BWH, and any chapter 7 trustee for the bankruptcy estates for the Debtor, Eventide, or BWH. The Settlement Agreement shall be binding on the Parties regardless of whether the Debtor's Bankruptcy Case or the Eventide Bankruptcy Case is dismissed or closed.

10. **Effect of Settlement Agreement on Consumer Borrowers**. The Consumer Borrowers dispute the recitals by the Settlement Parties in paragraphs R and S (the "**Disputed**

**Recitals**") of the Settlement Agreement. Neither the approval of the Settlement Agreement containing the Disputed Recitals nor the entry of this Order shall have any preclusive effect on either (i) the proofs of claim filed (or which may be filed) by any Consumer Borrowers against Eventide, BWH, or Martorello for any period prior to the Effective Date of the Settlement Agreement; or (ii) any objections or defenses thereto filed (or which may be filed) by Eventide, BWH, or Martorello. Nothing in the Motion or this Order is intended to resolve the rights, claims, or contentions of any Consumer Borrowers against Eventide, Martorello, BWH, or any other party to the Settlement Agreement. Nothing in the Motion or this Order constitutes a declaration or determination as to the legality of Big Picture's lending business.

11. **Effect of Settlement Agreement on Virginia Settlement**. In May 2024, the United States District Court for the Eastern District of Virginia (the "**EDVA**") preliminarily approved a proposed, contingent settlement (the "**EDVA Proposed Settlement**") between a nationwide settlement class of Consumer Borrowers, Martorello, Eventide, BWH, and certain other parties (the "**EDVA Settlement Parties**"), which would resolve the broader litigation between the EDVA Settlement Parties. The final approval of the Settlement Agreement shall have no preclusive effect with respect to the EDVA Proposed Settlement or the currently pending litigation between the Consumer Borrowers and Martorello in the EDVA or elsewhere. Nothing in the Motion or this Order is intended to: (i) resolve or otherwise affect the prior findings in the EDVA or the United States Court of Appeals for the Fourth Circuit, including any findings of fact and conclusions of law about the role of Martorello, Eventide, or BWH in the origination of loans by BPL, the collection of loans by BPL, or the operations of BPL, which BPL, Martorello, Eventide, and BWH dispute; or (ii) affect or impair any rights or defenses BPL, Martorello, Eventide, or BWH may have with respect to any such prior findings of fact or conclusions of law.

-13-

12. **Retention of Jurisdiction**: The Court retains jurisdiction to enforce, implement, and interpret the terms of this Order and the Settlement Agreement and all other matters addressed herein.

13. **Waiver of 14 Day Stay**: This Order is immediately valid and fully effected upon its entry with respect to the automatic stay, and the fourteen (14) day stay imposed pursuant to Bankruptcy Rule 4001(a)(3) and 6004(h) is waived.

### End of Order ###