Execution Version

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") dated October 17, 2024 is made and entered into by and between Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"), Big Picture Loans, LLC ("BPL"), and Eventide Credit Acquisitions, LLC ("Eventide"), individually and as debtor-in-possession and estate representative for the bankruptcy estate of Eventide Credit Acquisitions, LLC, including the "Eventide Estate," defined below.  Together Eventide, the Tribe, and BPL shall be referred to as the "Settlement Parties."

The Agreement also includes Tribal Economic Development Holdings, LLC ("TED"), Ascension Technologies, LLC ("Ascension"), BWH Texas, LLC ("BWH"), Matt Martorello ("Martorello"), Loeb & Loeb, LLP ("Loeb Firm"), Bernard R. Given, II ("Given"), Brophy & Bland, PLLC ("BB Firm"), and Joseph Brophy ("Brophy").  Together TED, Ascension, BWH, Martorello, Loeb Firm, Given, BB Firm, and Brophy shall be referred to as the "Limited Parties."

The Settlement Parties and the Limited Parties are collectively referred to herein as the "Parties," and sometimes each of the foregoing is referred to individually as a "Party."

## RECITALS

A.      On September 18, 2020, BPL, as borrower, executed and delivered that certain note (the "Note"), in the original principal amount of $32,097,958, payable by BPL to Eventide, as lender.

B.      On September 18, 2020, BPL, as borrower, and Eventide, as lender, also entered into a Loan and Security Agreement ("LSA").

C.      The outstanding principal balance of the Note was approximately $26.85 million, excluding interest, fees, and other amounts payable to Eventide pursuant to the Note and LSA.

D.      On June 23, 2023, Eventide issued a Notice of Default under the LSA and the Note, demanded acceleration of all payments and that BPL wind up its business; demanded all of BPL's proceeds be held in trust and delivered to Eventide; and demanded that BPL surrender all cash reserves.

E.      On September 1, 2023, BPL discontinued payments under the Note.

F.      On August 23, 2024, the Tribe exercised its police and regulatory powers and filed a Complaint for Condemnation to condemn the Note and LSA.

G.      Both the Notice of Default and the Condemnation precipitated into a number of disagreements between the Settlement Parties regarding the respective rights and obligations of the Tribe, BPL, and Eventide relating to the Note and LSA, which have led to various pending litigation matters between the various Parties in the federal and tribal forums described herein.

H.      By this Agreement, the Settlement Parties memorialize a global resolution to all disputes among the Tribal Parties (defined below), on the one hand, and the Eventide Released Parties (defined below), on the other, both existing and that may exist in the future (except for any future disputes arising under or relating to this Agreement), known and unknown, and to provide full and complete closure of all existing, threatened, and potential actions as provided herein.

---

Execution Version

**Pending Matters in the Bankruptcy Court:**

I.      On September 6, 2023, Eventide filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). Eventide's bankruptcy case is currently pending as Case No. 23-90007-mxm11.

J.      On October 9, 2023, BWH filed a voluntary chapter 11 bankruptcy petition in the Bankruptcy Court as Case No. 23-43085 mxm11. The BWH bankruptcy case and the Eventide bankruptcy case are currently being jointly administered under Case No. 23-90007-mxm11. Collectively, the Eventide bankruptcy case and the BWH bankruptcy case shall be referred to herein as the "Eventide Bankruptcy Case").

K.      On September 20, 2024, Matthew B. Martorello filed a voluntary chapter 11 bankruptcy petition in the Bankruptcy Court. Matthew B. Martorello's bankruptcy case is currently pending as Case No. 24-90016-mxm11 ("Martorello Bankruptcy Case").

L.      There are numerous matters currently pending between the Tribe, BPL, and Eventide in the Bankruptcy Court, including the following:

(i)      Eventide's *Complaint for Turnover pursuant to Sections 542(a), 542(b), and 542(e) of the Bankruptcy Code* against BPL [ECF 1] in Adversary Proceeding No. 23-09006-mxm (the "BPL Adversary Proceeding");

(ii)     Eventide's *Third Amended Motion to Enforce the Automatic Stay against Big Picture Loans, LLC* (the "BPL Enforcement Motion") [ECF 301];

(iii)    BPL's *Conditional Motion for Relief from Stay and for Adequate Protection* (the "Stay Relief Motion") [ECF 340, 341];

(iv)     BPL's *Motion to Stay Proceedings in favor of Arbitration, or to Abstain in Favor of Arbitration* (the "Arbitration Motion") [ECF 313];

(v)      BPL's *Emergency Motion for Continuance of Hearing Set for September 5, 2024* (the "Continuance Motion") [ECF 370];

(vi)     Eventide's *Original Complaint to Enforce the Automatic Stay and for Injunctive Relief against Lac Vieux Desert Band of Lake Superior Chippewa Indians* [ECF 1] in Adversary Proceeding No. 24-09000-mxm (the "LVD Adversary Proceeding");

(vii)    Eventide's *Motion to Enforce the Automatic Stay against Lac Vieux Desert Band of Lake Superior Chippewa Indians* (the "LVD Enforcement Motion") [ECF 378]; and,

(viii)   Eventide's *Motion for Emergency Consideration of (A) Injunction Request in Original Complaint to Enforce the Automatic Stay and for Injunctive Relief against Lac Vieux Desert Band of Lake Superior Chippewa Indians, and (B) Motion to Enforce the Automatic Stay against Lac Vieux Desert Band of Lake Superior Chippewa Indians* (the "Emergency Hearing Motion") [ECF 3 in the LVD Adversary Proceeding; ECF 381 in the Bankruptcy Case].

**Pending Matters in the District Court:**

M.     The following matters are pending between BPL and Eventide in the United States District Court for the Northern District of Texas (the "District Court"):

(i)     BPL's appeal (Case No. 24-cv-00103-P) (the "Arbitration Appeal") of the Order Denying Big Picture Loans, LLC's Motion to (I) Dismiss the Complaint under Rule 12(b)(6), (II) Dismiss the Complaint and Compel Arbitration, or (III) Abstain in favor of Arbitration [ECF 32 in the BPL Adversary Proceeding]; and

(ii)    BPL's Motion for Leave to Appeal Order Denying Big Picture Loans, LLC's Motion for Entry of Pretrial Scheduling Order Regarding Arbitration and Motion to Enforce the Automatic Stay [ECF 333 in the Eventide Bankruptcy Case], docketed as Case No. 24-cv-00759-P (the "Procedures Order Appeal") in the District Court.

**Pending Matters in LVD Tribal Court:**

N.     The following matters are pending among the Parties in the Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Court (the "LVD Tribal Court"):

(i)     The Tribe's *Complaint for Condemnation* against Eventide, pending as Case No. 24-cv-04 (the "Condemnation Action"); and

(ii)    BPL's Complaint against Martorello, Loeb Firm, Given, BB Firm, and Brophy, pending as Case No. 24-cv-05 (the "LVD Tribal Court Action").

O.     The matters described in Sections L, M, and N—the BPL Adversary Proceeding, BPL Enforcement Motion, Stay Relief Motion, Arbitration Motion, Continuance Motion, LVD Adversary Proceeding, LVD Enforcement Motion, Expedited Hearing Motion, Arbitration Appeal, Procedures Order Appeal, Condemnation Action, and LVD Tribal Court Action—are collectively referred to herein as the "Pending Actions."

P.     The Eventide Released Parties (defined below) dispute the allegations made by BPL and/or the Tribe in the Pending Actions, and the Tribe and BPL dispute the allegations made by Eventide in the Pending Actions. In addition, the Eventide Released Parties dispute all findings and determinations in Tribal Council Resolution No. 2024-072, including those findings and determinations referenced in the Condemnation Action.

Q.     The Settlement Parties stipulate and agree that it is necessary and desirable for there to be complete severance and separation of any relationship between the Tribe and BPL, on the one hand, and Eventide, on the other, save and except for the obligations arising under this Agreement, the Settlement Approval Order (defined below), and the Condemnation Judgment (defined below).

R.     Eventide has only ever served as a lender to BPL since Eventide's inception. Since September 18, 2020, Eventide's involvement with BPL has been limited to financing a settlement agreement between Eventide, on the one hand, and the Tribe, BPL, TED, and Ascension (collectively, the "Tribal Parties"), on the other, which resolved several disputes at issue in federal court and in arbitration prior to that date.

Execution Version

S.       Since it was formed on December 1, 2015, BPL is the only entity to originate and to collect on its loans to consumer borrowers.  No non-tribal entities or individuals, aside from non-member Tribal employees, have ever participated directly or indirectly in the operation or management of any of the Tribal Parties.

T.       To avoid the uncertainty and cost of continued litigation in connection with the Pending Actions, and to resolve all disagreements and disputes between the Parties set forth therein, and to provide sufficient assurances that sufficient assets exist to satisfy all obligations described herein, the Parties wish to fully and forever settle their disputes as set forth in this Agreement.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legally bound hereby, the Parties, as applicable, hereby agree as follows:

1.       <u>Recitals True and Correct</u>.  The above recitals are true and correct and are hereby incorporated as an integral part of this Agreement.

2.       <u>Settlement Amount</u>.   For and in consideration of the terms and conditions contained herein, including the Mutual Releases (defined below), Eventide's agreement to the entry of the Condemnation Judgment (defined below), and Eventide's agreement to accept the payment of the Settlement Amount (defined below) over time as described herein, the Settlement Parties agree to the following:

(a)     The Tribe shall pay to the Eventide Estate (defined below) the sum of $16,886,983.71 (Sixteen Million Eight Hundred Eighty-Six Thousand Nine Hundred Eighty-Three and 71/100 U.S. Dollars) (the "<u>Settlement Amount</u>") as follows:

    (i)     $1,500,000.00 (One Million Five Hundred Thousand and 00/100 U.S. Dollars) within three (3) business days of the Effective Date (as defined below);

    (ii)    $1,000,000.00 (One Million and 00/100 U.S. Dollars) on May 1, 2025;

    (iii)   $14,386,983.71 (Fourteen Million Three Hundred Eighty-Six Thousand Nine Hundred Eighty-Three and 71/100 U.S. Dollars), with such sum bearing interest from the Effective Date at the rate of three and seven tenths percent (3.7%), and payable in forty-eight (48) substantially equal monthly installments of $322,916.67, with the first such installment being due and payable on November 1, 2024, and with a like installment being due and payable on the first day or each successive calendar month thereafter through October 1, 2028, at which time the entire unpaid balance of the Settlement Amount, including all unpaid sums of principal and interest, shall be due and payable;

    (iv)    A payment schedule reflecting each of the payments to be made to the Eventide Estate by the Tribe pursuant to this Agreement (the "<u>Payments</u>") is also attached as **Exhibit A**;

---

(v)     The Payments shall be made by the Tribe via wire or ACH transfer to the Eventide Estate pursuant to wiring instructions to be provided by the Eventide Estate to the Tribe upon the entry of the Settlement Approval Order, or via wire or ACH transfer to such other account as may subsequently be specified in a notice by the Eventide Estate to the Tribe pursuant to this Agreement;

(vi)    All Payments due under this Agreement shall continue to be made pending the adjudication of any dispute relating to the interpretation and enforcement of this Agreement; provided, however, that if a good faith dispute exists pertaining to the Tribe's payment obligations under this Agreement, then the Eventide Estate shall not disburse any of the additional payments received from the Tribe pending the resolution of such dispute except for any funds needed to pay the Eventide Estate's reasonable attorneys' fees pertaining to such dispute; and

(vii)   The Settlement Amount, and any Payments made hereunder, shall be free and clear of any tribal tax or other extraction by the Tribe under the LVD Constitution or any other Tribal laws and regulations.

(b)     The Tribe has the right at any time to pay any or all of the then remaining principal balance of the Settlement Amount due under this Agreement with interest to the time of payment.  No penalty will apply to any prepayment of the remaining balance of the Settlement Amount.

(c)     Although this Agreement also provides the manner in which the Tribe will pay the Settlement Amount pursuant to the Condemnation Judgment (defined below), this Agreement constitutes a separate and independent obligation of the Tribe to pay the Settlement Amount to the Eventide Estate; provided, however, that (i) the Eventide Estate shall only be entitled to a single satisfaction of the Settlement Amount, and any payment of the Settlement Amount pursuant to the Condemnation Judgment shall be credited as a payment against this Agreement, and vice versa, and (ii) the collection, enforcement and other remedies under this Agreement shall only be available to the Eventide Estate upon the occurrence of an Event of Default (defined below) under this Agreement by the Tribe..

3.      Default.  The occurrence of any of the following events shall constitute a default by the Tribe (each, an "Event of Default") under this Agreement:

(a)     The failure to pay any amount due under the Condemnation Judgment or this Agreement when due; provided, however, the failure to pay any sum due under the Condemnation Judgment or this Agreement shall only constitute an Event of Default after the Eventide Estate has given the Tribe written notice of the default, and the default remains uncured as of the tenth (10th) day after giving of any such notice of default; provided further, however, after the Eventide Estate has given three (3) such notices of default to the Tribe, any subsequent payment default is deemed to constitute an Event of Default without the necessity of any notice to cure.  Any such written notice by the Eventide Estate to the Tribe shall be given as specified in paragraph 33 below;

(b)     The entry of an order for relief for or against any of the Tribal Parties in a case filed

---

Execution Version

pursuant to Title 11 of the U.S. Code (or any equivalent under the LVD Constitution, or any other laws and regulations applicable to any of the Tribal Parties), or the appointment of a receiver for substantially all of any Tribal Party's non-exempt assets.

4. <u>Remedies</u>.  Upon the occurrence of an Event of Default, the Eventide Estate may elect all or any of the following remedies:

(a)     If an Event of Default under paragraph 3(a) shall have occurred, all amounts due under this Agreement shall be automatically accelerated and immediately due and payable without notice or demand.  If any other Event of Default shall have occurred which, to the extent capable, has not been waived by the Eventide Estate, at the election of the Eventide Estate, all amounts due under this Agreement shall be automatically accelerated and immediately due and payable without notice or demand; and

(b)     The Eventide Estate may exercise all rights and remedies pursuant to this Agreement and applicable Delaware or federal law, including federal bankruptcy law, as it in the sole exercise of its discretion may elect.

5. <u>Post-Maturity and Default Interest</u>.  From and after the earlier to occur of (i) an Event of Default, or (ii) October 1, 2029, the entire unpaid amount still owed under this Agreement shall bear interest at the rate of 18% per annum until the balance of principal and interest outstanding is fully paid, which is and shall remain a lawful interest rate under all laws and resolutions applicable to the Tribe; <u>provided, however</u>, nothing contained herein shall be construed or operate as to require the Tribe to pay, or the Eventide Estate to accept, interest at a rate greater than is lawful. It is understood and agreed that in the event the payment of any interest due hereunder would subject the Eventide Estate to any penalty under applicable law, then ipso facto the obligations of the Tribe to make such payment shall be reduced to the highest rate authorized under applicable law.

6. <u>Bankruptcy Court Approval</u>.  This Agreement is expressly subject to approval by the Bankruptcy Court in the Eventide Bankruptcy Case and the Martorello Bankruptcy Case as follows:

(a)     Within three (3) days of the Parties executing this Agreement, Eventide shall file with the Bankruptcy Court in the Eventide Bankruptcy Case, and Martorello shall file in the Martorello Bankruptcy Case, a motion seeking entry of an order approving this Agreement (the "<u>Settlement Approval Order</u>") on an expedited basis.

(b)     The Settlement Approval Order shall include findings by the Bankruptcy Court that (i) the payment by the Tribe of the Settlement Amount is not unlawful and is separate from and unrelated to BPL's business operations; (ii) the terms of this Agreement are lawful and binding upon, and enforceable against, the Parties; (iii) the waivers of sovereign immunity, waivers of the right to tribal exhaustion or litigation in a Tribal Forum, and other waivers and consents by the Tribal Parties in this Agreement are valid, effective, and binding upon, and enforceable against, the Tribal Parties; (iv) the Eventide Estate's subsequent payment or distribution of any funds received from the Tribe or any of the other Tribal Parties pursuant to this Agreement, the Condemnation Judgment, or any enforcement thereof is not

unlawful; (v) the Tribe exercised its police and regulatory powers by filing a Complaint for Condemnation to condemn the Note and LSA; and (vi) the Condemnation Judgment, described below, is in all respects binding on the Eventide Estate and entitled to comity and recognition by the Bankruptcy Court.

(c)     In the event the Bankruptcy Court does not approve this Agreement, the Settlement Approval Order does not include the findings in paragraph 6(b) above, or the Settlement Approval Order contains findings or provisions not approved by the Settlement Parties, then this Agreement shall be mutually rescinded, and the Parties will be restored to the position each occupied as of the date of the execution of this Agreement, and the Settlement Parties and Limited Parties, as applicable, shall endeavor to stipulate to new deadlines for all Pending Matters.

7.      <u>Independent Collection Agent for Eventide Estate</u>.  From and after the Effective Date of this Agreement, and solely with respect to all matters relating to this Agreement, the term "<u>Eventide Estate</u>" shall mean the Eventide estate acting through an independent Collection Agent (defined below) pursuant to this Agreement.  In the Settlement Approval Order, Daniel J. Sherman, Esq. (hereinafter, the "<u>Collection Agent</u>") shall be appointed as an independent collection agent for the Eventide Estate for the purpose of overseeing all matters pertaining to this Agreement, the payments required by the Tribe hereunder, and any enforcement thereof.  The Collection Agent shall owe strict fiduciary duties to the Eventide Estate with respect to all matters pertaining to this Agreement, including the receipt of payments hereunder and any enforcement hereof.   All payments received by the Collection Agent on behalf of the Eventide Estate shall be retained by the Collection Agent in a separate IOLTA account in the name of the Eventide Estate, or such other account as may be ordered by the Bankruptcy Court, pending further order of the Bankruptcy Court regarding the distribution of any such funds.  The Tribal Parties shall have no right to object to any proposed Bk Court disbursement of funds.  Should Mr. Sherman at any time be unable to serve as the Collection Agent for the Eventide Estate, then a replacement independent Collection Agent may either be (i) agreed upon as between counsel for the Tribe and counsel for the Eventide Estate in writing, or (ii) appointed by the Bankruptcy Court.

8.      <u>Condemnation Action</u>.  The Settlement Approval Order shall include language providing that the automatic stay, to the extent it applies, shall lift to permit the Tribe and Eventide to file a stipulated motion for entry of a final judgment with the LVD Tribal Court in the Condemnation Action (the "<u>Condemnation Judgment</u>") as follows:

(a)     Within seven (7) days after the entry of the Settlement Approval Order, the Tribe will prepare the proposed Condemnation Judgment, and after Eventide's review, approval, and execution, will file and seek entry of the proposed Condemnation Judgment in the LVD Tribal Court on an expedited basis;

(b)     The Condemnation Judgment shall: (i) provide for the condemnation of the Note and LSA by the Tribe, (ii) provide for the payment of the Settlement Amount to the Eventide Estate as set forth herein as "Just Compensation" for the Note and LSA pursuant to section 2.8 of the Tribe's Eminent Domain Code, (iii) include findings approving the waivers of sovereign immunity by the Tribal Parties, the waivers by the Tribal Parties of the right to tribal exhaustion or litigation in a Tribal Forum, and the other waivers and consents by the Tribal Parties in this Agreement as valid, effective, and binding upon, and enforceable against the Tribal Parties, and (iv) include a finding by the LVD Tribal Court that the waivers of sovereign immunity, the waivers of the right to tribal exhaustion or litigation in a Tribal Forum,

and the other waivers and consents by the Tribal Parties in this Agreement are necessary in furtherance of tribal business and consistent and in compliance with Article XIII of the *Constitution of the Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan* (the "<u>LVD Constitution</u>") and all other laws and resolutions applicable to the Tribe;

(c)      The Tribe stipulates and agrees that neither the Condemnation Judgment, this Agreement, nor the Settlement Approval Order can be the subject to any further condemnation proceedings by the Tribe and hereby expressly agrees that any such action shall constitute an immediate Event of Default; and,

(d)      In the event the LVD Tribal Court does not approve this Agreement, the Condemnation Judgment does not include the findings in paragraph 8(b) above, the Condemnation Judgment contains findings or provisions not approved by the Settlement Parties, or is not entered by November 1, 2024, which date may be extended by the Settlement Parties in writing, then this Agreement shall be mutually rescinded, and the Parties will be restored to the position each occupied as of the date of the execution of this Agreement, and the Settlement Parties and Limited Parties, as applicable, shall endeavor to stipulate to new deadlines for all Pending Matters.

9.      <u>Mutual Releases</u>. For and in consideration of the covenants, agreements, and undertakings of the Settlement Parties in this Agreement, the Parties agree to the following mutual releases:

(a)      As used in this Agreement:

(i)      the term "<u>Claim</u>" shall mean any claim, cause of action, liability, obligation, demand and right to payment, whether or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, asserted or unasserted, known or unknown, and whether arising under any contract, common law or tort law of any jurisdiction, or any statute, law or rule of any jurisdiction, and including without limitation any right to equitable relief as well as any remedy, whether legal or equitable, from the beginning of the world through the Effective Date including without limitation all such Claims which pertain to, arise out of, or relate to any act, occurrence or event which occurred on or before the Effective Date. The term "<u>Claim</u>" shall not include any rights, obligations or remedies pursuant to this Agreement, the Settlement Approval Order, or the Condemnation Judgment;

(ii)      The term "<u>Released Affiliates</u>" shall include each Party's former and current employees, representatives, affiliates, consultants, agents, partners, associates, officers, Councilmembers, directors, managers, members, general partners, limited partners, attorneys, accountants, consultants, predecessors-in-interest, successors-in-interest, and any and all other persons, entities, or trusts, whether presently or previously in existence, that are directly or indirectly in any way now or heretofore owned by, controlled by, related to, or associated with any of the foregoing, but only in relation to any Claim against a Released Affiliate arising from or out of transactions with, the conduct of, or the acts or omissions of, a Party to this

Agreement, as well as any Claims arising out of any conduct, act or omission by any of the Released Affiliates on behalf of, or as a representative or agent of, or at the direction or behest of, any Party; provided, however, that the term "Released Affiliates" expressly excludes Connor & Winters, LLP, Greenberg Traurig, LLP, Rosette, LLP, and their respective employees, shareholders, partners, and attorneys;

(iii)   The term "Tribal Released Parties" shall mean the Tribe, TED, BPL, Ascension, and each of their respective Released Affiliates (which shall include, for the avoidance of doubt (a) Mshkawzi Law and its employees, shareholders, partners, and attorneys, and (b) Norton Rose Fulbright, its employees, partners, attorneys, and contract attorneys);

(iv)   The term "Eventide Releasing Parties" shall mean Eventide, BWH, Martorello, Loeb Firm, Given, BB Firm, and Brophy; and,

(v)    The term "Eventide Released Parties" shall mean Eventide, BWH, Martorello, Loeb Firm, Given, BB Firm, Brophy, and each of their respective Released Affiliates (which shall include, for the avoidance of doubt (a) Forshey Prostok, LLP, its employees, partners, and attorneys, (b) Phelanlaw, its employees, partners, and attorneys, (c) Freeman Law, PLLC, its employees, partners, and attorneys, and (d) Winikka Law PLLC, its employees, partners, and attorneys).

(b)    Each of the Tribal Parties hereby releases and covenants not to sue each of the Eventide Released Parties from all Claims as of the Effective Date.

(c)    Each of the Eventide Releasing Parties hereby releases and covenants not to sue each of the Tribal Released Parties from all Claims as of the Effective Date.

10.   Consents to Jurisdiction.  Each of the Tribal Parties consents to the jurisdiction of the Bankruptcy Court for the limited and sole purpose of entering the Settlement Approval Order. Following the entry of the Settlement Approval Order:

(a)    The Tribal Parties each hereby expressly, irrevocably, and unconditionally consents to the jurisdiction of the Bankruptcy Court, including the entry of final orders and judgments by the Bankruptcy Court, with respect to any and all claims, controversies, disputes, defenses, or other issues arising under, arising out of, or in any way relating to this Agreement, including the entry of any orders, judgments, liens, garnishments, or other orders, writs or process necessary, appropriate, or sought by the Eventide Estate to enforce this Agreement;

(b)    The consents to jurisdiction in item (a) above include the consent by the Tribal Parties to the entry by the Bankruptcy Court of final orders and judgments, and a waiver of any right to seek to withdraw the reference from the Bankruptcy Court or for the Bankruptcy Court to abstain in favor of any other tribunal; and,

(c)    Eventide expressly, irrevocably, and unconditionally consents to the jurisdiction of the LVD Tribal Court for the purpose of entering the Condemnation Judgment in the Condemnation Action but does not consent to the jurisdiction of the LVD Tribal Court for any other purpose.

11.    <u>Waivers of Sovereign Immunity</u>.  The Tribal Parties agree as follows:

(a)    The Tribe, for itself and on behalf of TED, BPL, and Ascension, and each of TED, BPL, and Ascension, on its own behalf (to the extent it has an independent right to assert sovereign immunity), hereby expressly, irrevocably, and unconditionally waives sovereign immunity and consents to suit in the Bankruptcy Court (or any other federal court of competent jurisdiction), and the entry of appropriate orders and judgments by the Bankruptcy Court (or any other federal court of competent jurisdiction), against the Tribe and/or any of the other Tribal Parties with respect to:

(i)    any and all actions in which the Eventide Estate alleges a breach by any of the Tribal Parties of one or more specific obligations or duties under the terms of this Agreement, the Settlement Approval Order, or the Condemnation Judgment (following formal recognition), and

(ii)    the enforcement of this Agreement, the Settlement Approval Order, and the Condemnation Judgment by the Bankruptcy Court (or any other federal court of competent jurisdiction) through the entry of any appropriate final orders, judgments, liens, garnishments, processes or other remedies needed for the Eventide Estate to enforce this Agreement, the Settlement Approval Order, or the Condemnation Judgment, or otherwise collect the amounts due under this Agreement, the Settlement Approval Order, and Condemnation Judgment against the Assets (defined below) of any of the Tribal Parties.

(b)    Without waiving the breadth and generality of the foregoing, these waivers and consents by the Tribe, for itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent it has an independent right to assert sovereign immunity), expressly include:

(i)    following an Event of Default under paragraph 3(a), the Eventide Estate's ability to commence and prosecute to conclusion any right, claim, or remedy in relation to, or arising out of or pertaining to this Agreement, the Settlement Approval Order, or the Condemnation Judgment, including any action for formal recognition of the Condemnation Judgment;

(ii)    following an Event of Default under paragraph 3(a), the Eventide Estate's ability to commence and prosecute litigation in the Bankruptcy Court (or any other federal court of competent jurisdiction) to conclusion seeking specific performance or other specific action, or discontinuation of some action, by the Tribe to remedy an alleged breach of this Agreement, the Settlement Approval Order, or the Condemnation Judgment, and to bring the Tribe into full compliance with its duties and obligations thereunder;

(iii)    following an Event of Default under paragraph 3(a), the Eventide Estate's ability to commence and prosecute litigation in the Bankruptcy Court (or any other federal court of competent jurisdiction) against the Tribal Parties to conclusion seeking injunctive relief and/or avoidance actions against the Tribal Parties to remedy actions or conduct which cause any breach of any of the terms or provisions of this Agreement, the Settlement Approval Order, or Condemnation Judgment;

Execution Version

(iv)    following an Event of Default under paragraph 3(a), the Eventide Estate's ability to commence and prosecute litigation in the Bankruptcy Court (or any other federal court of competent jurisdiction) against the Tribe and any of the other Tribal Parties to conclusion seeking money damages against the Tribe and/or any of the other Tribal Parties based on a breach of or noncompliance with the terms and provisions of this Agreement, the Settlement Approval Order, and Condemnation Judgment;

(v)     the ability and power of the Bankruptcy Court (or any other federal court of competent jurisdiction) to enter any final orders, judgments, liens, garnishments, or other remedies, writs, or process in favor of the Eventide Estate against any of the Tribal Parties to enforce this Agreement, the Settlement Approval Order, or Condemnation Judgment or otherwise collect the amounts due under this Agreement, the Settlement Approval Order, or Condemnation Judgment against the Assets of any of the Tribal Parties;

(vi)    the ability and power of the Bankruptcy Court (or any other federal court of competent jurisdiction) to enter final orders, judgments, liens, garnishments, or other remedies, writs, or process against any Assets of any of the Tribal Parties that are not Protected Assets and sufficient to remedy, and not more than, any unpaid amounts; and

(vii)   references to the Bankruptcy Court in this Agreement include any appropriate court with appellate jurisdiction over the Bankruptcy Court.

(c)    For purposes of this Agreement, the Settlement Approval Order, and the Condemnation Judgment, the term "Assets" shall specifically include, but not be limited to, the assets of the Tribe, the assets of any of the other Tribal Parties, and any and all distributions therefrom, unless such assets are Protected Assets (defined below).  The Assets shall include all property of the Tribe and each of the other Tribal Parties of every type and nature, real or personal, tangible or intangible, and wherever located, unless such assets are Protected Assets or otherwise protected or restricted by federal law.  Additionally, the Tribe expressly agrees that neither the Tribe nor any of the other Tribal Parties that holds Assets, including but not limited to BPL, TED and Ascension, shall assert the defense of sovereign immunity to any action brought by the Eventide Estate seeking the entry of any appropriate final orders, judgments, liens, garnishments, processes or other remedies needed for the Eventide Estate to enforce this Agreement, the Settlement Approval Order, or the Condemnation Judgment, or otherwise collect the amounts due under this Agreement.

(d)    For purposes of this Agreement, the Settlement Approval Order, and the Condemnation Judgment, the term "Protected Assets" shall refer to the following: (1) any real property held in trust in the name of the United States or subject to restrictions against alienation by the United States for the benefit of the Tribe and all improvements, fixtures and accessions to such property; (2) any personal property of the Tribe against which it would be a violation of applicable federal law, state law or the Tribe's gaming compact with the State of Michigan to enforce remedies, including any assets credited to any special revenue funds which are subject to restrictions in connection with the Tribe's administration of any state or

federal grants or programs; (3) any accounts (including money, securities or assets credited thereto) held in escrow or pursuant to a fiduciary obligation on behalf of, or for the benefit of, one or more third parties, including minors, elders and incompetent Tribal members; and (4) any real property and all improvements, fixtures and accessions to such real property used by the Tribe for tribal housing, health, community, or essential government services within the meaning of the Internal Revenue Code §7871, such as those related to health, safety and welfare. For clarification and avoidance of doubt, the term "Protected Assets" shall not include any of the assets held by the Tribe, BPL, Ascension, or TED that are used in or related to the operations of the Tribe's consumer lending business.

(e)   Without limiting the foregoing, it is expressly agreed by the Tribe, for itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent each has an independent right to assert sovereign immunity), that the Assets of the Tribe, TED, BPL, and Ascension, shall be available and may be subject to any order, judgment, lien, garnishment, process, or other remedy to satisfy the obligations to the Eventide Estate under this Agreement, the Settlement Approval Order, and the Condemnation Judgment, and that the waivers of sovereign immunity, and any other waivers and consents contained in this Agreement shall apply to the Assets of TED, BPL, and Ascension to the same extent as such waivers of sovereign immunity and other waivers and consents apply to the Assets of the Tribe.

(f)   The Tribe, for itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent each has an independent right to assert sovereign immunity), further expressly, irrevocably, and unconditionally agrees that the waiver of sovereign immunity and other waivers and consents in this paragraph 11 are not limited to the Bankruptcy Court and equally apply and extend to any action, litigation, or other matter pending in any other federal court of competent jurisdiction where any orders, judgments, remedies, writs, or process entered by the Bankruptcy Court against any of the Tribal Parties are taken for domestication, registration, and/or enforcement by the Eventide Estate.   For example, if any such order, judgment, remedy, writ, or process of the Bankruptcy Court is taken by the Eventide Estate to a federal court in Michigan for domestication, registration, and/or enforcement against the Assets of any of the Tribal Parties, then the waivers and consents in this paragraph 11 shall equally apply to any action, litigation, or other matter before such Michigan federal court. Any court where an order, judgment, remedy, writ, or process by the Bankruptcy Court is taken for domestication, registration, and/or enforcement can likewise take any action that the Bankruptcy Court could have taken based on the waivers and consents by the Tribe, on behalf of itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent each has an independent right to assert sovereign immunity), contained in this paragraph 11.

(g)   The waivers described in this paragraph 11, and in paragraphs 12, 13, and 14, are only to enforce an amount owed and shall not be construed to allow any court to issue any order that interferes with, inhibits, or prevents the Tribe from exercising its sovereign authority, self-governance, and its ability to care for its members and its territory/reservation as described in Article 1 of the Tribe's Constitution.  Nothing herein waives immunity or consents to any order or judgment from any court that

would restrict the governing body of the Tribe; provided, however, that any order, judgment, lien, garnishment, process, or other remedy solely limited to allowing the Eventide Estate to recover amounts owed under this Agreement, the Settlement Approval Order, or the Condemnation Judgment shall not be construed as interference with Tribal governance.

(h)     The Tribe, for itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent each has an independent right to assert sovereign immunity), hereby further expressly, irrevocably, and unconditionally waives sovereign immunity as to an action by the Eventide Estate in the Bankruptcy Court seeking injunctive and/or declaratory relief and/or money damages against the Tribe and/or any of the other Tribal Parties based upon an attempt by the Tribe or any the Tribal Parties to revoke the waivers of sovereign immunity or other waivers and consents granted under this Agreement.

(i)     The Tribe, for itself and on behalf of the other Tribal Parties, and each of TED, BPL, and Ascension, on its own behalf (to the extent each has an independent right to assert sovereign immunity), hereby further expressly, irrevocably, and unconditionally waives sovereign immunity from a judgment or order (including any appellate judgment or order) and post judgment proceedings supplemental thereto consistent with the terms and provisions of this Agreement, which is final because either the time for appeal thereof has expired or the judgment or the order is issued by a court having final appellate jurisdiction over the matter.

(j)     The consents to the jurisdiction of the Bankruptcy Court, waivers of sovereign immunity, and waivers of Tribal Forum (defined below) by the Tribal Parties herein are expressly conditioned on the requirement that any action to enforce this Agreement, the Settlement Approval Order, and/or the Condemnation Judgment shall only be asserted by the Eventide Estate against (i) the Tribe, or (ii) the Tribe and one or more of TED, BPL, or Ascension, jointly and severally.

12.     Waiver of Tribal Forum.  For purposes of this Section, "Tribal Forum" shall mean the Tribal Court or any other tribunal, forum, council or adjudicative body of the Tribe.  Each of the Tribal Parties hereby expressly, irrevocably and unconditionally waives each of the following:

(a)     Its right to have any dispute, controversy, suit, action or proceeding arising under, arising out of, or in any way relating to this Agreement, the Settlement Approval Order, or Condemnation Judgment heard in any forum other than as described in paragraphs 10 and 11 of this Agreement;

(b)     any claim or right which it may possess to the exercise of jurisdiction by any Tribal Forum, including, without limitation, any determination that any Tribal Forum has jurisdiction over any such dispute, controversy, suit, action or proceeding or jurisdiction to determine the scope of such Tribal Forum's jurisdiction, and Eventide does not consent to the jurisdiction of any Tribal Forum except as expressly provided in paragraph 10(c); and,

(c)     any requirement which may exist for exhaustion of any remedies available in any Tribal Forum prior to the commencement of any dispute, controversy, suit, action or proceeding in any federal court even if any such Tribal Forum would have

---

concurrent jurisdiction over any such dispute, controversy, suit, action, or proceeding but for such waiver.

13.     JURY WAIVER.     EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) TO THE FULLEST EXTENT ALLOWED BY THE LAWS OF THE STATE OF TEXAS, WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS HEREUNDER, AND ALL MATTERS CONTEMPLATED HEREBY, AND (B) AGREES NOT TO SEEK TO CONSIDATE ANY SUCH ACTION WITH ANY OTHER IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.

14.     Waivers Irrevocable.     The Tribe covenants and agrees that it possesses the requisite sovereign authority to give the waivers of sovereign immunity, waivers of the right to tribal exhaustion or litigation in a Tribal Forum, and other waivers and consents contained in this Agreement for the Tribe itself as well as for TED, BPL, and Ascension.     The Tribe further covenants and agrees that the waivers of sovereign immunity, waivers of the right to litigate in a Tribal Forum, and other waivers and consents contained in this Agreement are consistent with the LVD Constitution and all other tribal laws and resolutions, and therefore valid, effective, and binding on each of the Tribal Parties; provided, that upon the full satisfaction of this Agreement, the Settlement Approval Order, and Condemnation Judgment, all waivers and consents contained herein are immediately extinguished.  Each of TED, BPL, and Ascension (to the extent it has an independent right to assert sovereign immunity, waive the right to tribal exhaustion or litigation in a Tribal Forum, and provide the other waivers and consents contained in this Agreement), likewise covenants and agrees that such waivers and consents are consistent with the LVD Constitution and all other tribal laws and resolutions, and therefore valid, effective and binding on each of TED, BPL, and Ascension.

15.     Representations and Warranties.     Each Party hereby represents, warrants, and agrees as follows:

(a)     Each Party (other than Eventide, BWH, and Martorello) represents and warrants that it has the authority to enter into this Agreement; that all authorizations have been obtained as necessary to enter into each provision and take any actions described herein; and that the person signing this Agreement on behalf of such Party is the duly authorized representative of such Party.

(b)     Each of Eventide, BWH, and Martorello represents and warrants that it has the authority to enter into this Agreement and that the person signing this Agreement on behalf of Eventide, BWH, and Martorello is its respective duly authorized representative; provided, however, the ability of Eventide, BWH, and Martorello to take the actions described herein is subject to the prior approval of the Bankruptcy Court.

(c)     Each Party to this Agreement represents and warrants that it has read and understands the foregoing Agreement; that it has relied on or has had the opportunity to rely on the legal advice of counsel in entering into this Agreement; that it has the capacity and right to enter into this Agreement; and that it accepts the duties, obligations, privileges, and rights granted hereunder.

(d)     The Parties acknowledge, understand, and agree that Martorello, Loeb Firm, Given, BB Firm, and Brophy (collectively, the "Eventide Limited Parties") join this Agreement for the limited purpose of making and receiving the Mutual Releases contained in paragraph 9, and joining in paragraphs 13, 15(a), 15(c), 15(d), 15(f), 18 through 22, and 24 through 35 of this Agreement. Consequently, the Parties understand and agree that the Eventide Limited Parties do not have any obligations under this Agreement, except as may be set forth in the Mutual Releases and other paragraphs specifically enumerated in this subparagraph. The Parties also understand and agree that the Eventide Limited Parties have standing to enforce the Mutual Releases and other paragraphs specifically enumerated in this subparagraph, but no other provisions of this Agreement. Each of the Eventide Limited Parties hereby expressly, irrevocably, and unconditionally consents to the jurisdiction of the Bankruptcy Court, including the entry of final orders and judgments by the Bankruptcy Court, with respect to any and all claims, controversies, disputes, defenses, or other issues arising under, arising out of, or in any way relating to this Agreement.

(e)     The Parties acknowledge, understand, and agree that TED and Ascension join this Agreement for the purpose of making and receiving the Mutual Releases contained in paragraph 9, and joining in and consenting to paragraphs 10 through 14, 15(a), 15(c), 15(e), 15(f), and 18 through 35 of this Agreement. TED and Ascension further consent to the inclusion of their respective assets in the definition of Assets. Consequently, the Parties understand and agree that TED and Ascension do not have any obligations under this Agreement, except as may be set forth in the Mutual Releases and other paragraphs specifically enumerated in this subparagraph. The Parties also understand and agree that TED and Ascension have standing to enforce the Mutual Releases and other provisions specifically enumerated in this subparagraph, but no other provisions of this Agreement.

(f)     The representations and warranties contained in this Agreement shall survive its execution and performance.

16.     <u>Dismissal of Pending Actions</u>.   Within seven (7) days after the entry of the Settlement Approval Order and the Condemnation Judgment:

(a)     Eventide shall dismiss the BPL Adversary Proceeding with prejudice;

(b)     Eventide shall dismiss the LVD Adversary Proceeding with prejudice;

(c)     Eventide shall withdraw the BPL Enforcement Motion, LVD Enforcement Motion, and Emergency Hearing Motion with prejudice;

(d)     BPL shall withdraw the Stay Relief Motion, Arbitration Motion, and Continuance Motion with prejudice;

(e)     BPL shall dismiss the Arbitration Appeal with prejudice;

(f)     BPL shall dismiss the Procedures Order Appeal with prejudice; and,

(g)     BPL shall dismiss the Tribal Court Action with prejudice.

---

17.    <u>Confidential Information regarding BPL Consumer Borrowers</u>.  BPL's business operations involve making loans to individual borrowers (the "<u>Consumer Borrowers</u>").  Certain of BPL's Consumer Borrowers have asserted (or may assert) claims against the Eventide Released Parties, including Eventide, BWH, and Martorello (the "<u>Consumer Borrower Claims</u>").  Eventide, BWH, Martorello, and/or any other Eventide Released Party to file bankruptcy may need to give notice of their respective bankruptcy cases to BPL's Consumer Borrowers on a nationwide basis even though the underlying basis for the Consumer Borrower Claims is disputed.  BPL represents and agrees that American Legal Claims Services ("<u>ALCS</u>") has or will have the name, address, and email address for each of BPL's and its predecessor's Consumer Borrowers from September 22, 2013 through the Effective Date of this Agreement (the "<u>Consumer Borrower Information</u>").  Solely for the purpose of enabling Eventide, BWH, Martorello, and/or any other Eventide Released Party to provide appropriate notices to the Consumer Borrowers in their respective bankruptcy cases, BPL hereby agrees as follows:

(a)    BPL shall authorize and allow ALCS to serve as the claims/noticing/balloting agent ("<u>Noticing Agent</u>") in the Eventide Bankruptcy Case, the Martorello Bankruptcy Case, and/or bankruptcy case of any other Eventide Released Party (collectively, the "<u>Eventide Released Party Bankruptcy Cases</u>"), and provide any notices, ballots, and other materials to the Consumer Borrowers in any Eventide Released Party Bankruptcy Cases on a confidential basis.  It is expressly understood and agreed that the Consumer Borrower Information is confidential and that under no circumstances shall Eventide, BWH, Martorello, or any other Eventide Released Party be entitled to review or possess such information.  Consequently, although BPL agrees that ALCS can provide notices and other necessary materials directly to the Consumer Borrowers in the Eventide Released Party Bankruptcy Cases, the Consumer Borrower Information shall not be included in any public filing or disclosed by ALCS to any other person or entity absent the entry of an appropriate order by the Bankruptcy Court.  Instead, ALCS shall assign each Consumer Borrower a unique identification number for the purpose of tracking which mailings (or electronic mailings) were sent to which Consumer Borrowers.

(b)    Alternatively, subject to BPL's approval, which shall not be unreasonably withheld, Eventide, BWH, Martorello, and/or any other Eventide Released Party may choose to employ Donlin Recano & Company, Inc. ("<u>DRC</u>") as their claims/noticing/balloting agent.  Upon BPL's approval, which shall not be unreasonably withheld, BPL shall authorize and allow ALCS to provide the Consumer Borrower Information to DRC, or BPL shall provide such information to DRC directly, on a confidential basis.  DRC shall likewise maintain a confidential list of the Consumer Borrowers for the purpose of sending appropriate notices, ballots, and other materials in the Eventide Released Party Bankruptcy Cases.  DRC likewise shall not include the Consumer Borrower Information in any public filing or otherwise disclose such information to any other person or entity absent the entry of an appropriate order by the Bankruptcy Court.  Additionally, under no circumstances shall Eventide, BWH, Martorello, or any other Eventide Released Party request such information or otherwise be entitled to review or possess the confidential information.  Instead, DRC shall likewise assign each Consumer Borrower a unique identification number for the purpose of tracking which mailings (or electronic mailings) were sent to which Consumer Borrowers.

(c)    BPL agrees that if Eventide, BWH, Martorello, and/or any other Eventide Released Parties determine, and obtain Bankruptcy Court approval, to provide notices,

---

ballots, or other materials in any Eventide Released Party Bankruptcy Case to Consumer Borrowers who obtain loans after the Effective Date of this Agreement (the "Later Consumer Borrowers"), then BPL shall provide the Consumer Borrower Information for such Later Consumer Borrowers to ALCS or DRC, as applicable, which likewise shall be maintained as confidential in accordance with subparagraphs (a) and (b), above.

(d)     BPL agrees that its obligation to provide the Consumer Borrower Information to ALCS or DRC as provided in this paragraph 17 is a material term of this Agreement. BPL's obligations pursuant to this paragraph 17 shall exist regardless of and notwithstanding any dispute by BPL regarding which parties, if any, may be authorized by the Bankruptcy Court to receive or view unredacted copies of the Consumer Borrower Information; provided, however, that it is expressly understood and agreed that Eventide, BWH, Martorello, and/or any other Eventide Released Party shall not be entitled to review or possess the Consumer Borrower Information.

18.     Assignment.  The Parties warrant that they have not assigned, transferred, or conveyed to any third party all or any part of, or any partial or contingent interest in, any of the claims which are called for to be released by this Agreement, and that they are aware of no third party who contends otherwise.  Eventide shall not assign its rights under this Agreement or the Condemnation Judgment without the prior express written consent of the Tribe.

19.     Attorneys' Fees.  The Parties agree that they shall bear their respective attorneys' fees and costs (including any investigation and expert costs) incurred in connection with this Agreement, the Settlement Approval Order, the Condemnation Judgment, and any matter set forth in the Recitals.  However, in the event of any legal action arising under, arising out of, or in any way relating to this Agreement, the Settlement Approval Order, or Condemnation Judgment, the interpretation of any thereof, or the failure of any Party to perform the terms of this Agreement, the Settlement Approval Order, or Condemnation Judgment, the prevailing party in such action is entitled to recover all reasonable attorneys' fees and costs, including attorneys' fees and costs on appeal and all legal fees and costs incurred in collecting the amounts under this Agreement, the Settlement Approval Order, or Condemnation Judgment, whether or not litigation is commenced.

20.     Tax Consequences.  This Agreement is enforceable regardless of its tax consequences.  The Parties make no representations regarding the Agreement's tax consequences.  The Parties, however, specifically agree that each Party is solely responsible for their own taxes, interest and penalties due and owing, if any, should any monetary benefit described in this Agreement and/or any other documents related to this Agreement, be deemed as taxable under state or federal law.  Notwithstanding anything to the contrary in this paragraph or elsewhere in this Agreement, the Tribe represents and warrants that the Settlement Amount, and any Payments made hereunder, shall be free and clear of any tribal tax or other extraction by the Tribe under the LVD Constitution or any other Tribal laws and regulations.

21.     Enforceability.  In case any provision of this Agreement shall be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

22.     Non-Admission.  This Agreement constitutes a compromise and settlement of claims which are denied and contested, and nothing in the settlement or in this Agreement or in any document referred to herein, or any act (including, but not limited to, the execution of this

Agreement and/or the payment of the consideration for this Agreement) of any Party, or any transaction occurring between or among any Parties hereto prior to the date of this Agreement, is or shall be treated, construed, or deemed as an admission by any Party of any liability, fault, responsibility, or guilt of any kind to any Party hereto or to any person, as to any allegation or claim all such liability, fault, responsibility and guilt of any kind being expressly denied.

23.     <u>Joint Drafting of the Agreement</u>.  This Agreement is the result of negotiations between the Settlement Parties.  The Settlement Parties have cooperated in and/or consented to the drafting and preparation of this Agreement and have been advised by their respective attorneys regarding the terms, effects, and consequences of this Agreement.  Accordingly, this Agreement shall be construed fairly and not in favor or against any Settlement Party, regardless of which Settlement Party drafted or participated in the drafting of its terms and shall not be construed as having been drafted solely by or on behalf of any one or more of the Settlement Parties hereto.

24.     <u>Joint Drafting of Provisions Applicable to Limited Parties</u>.  The mutual releases contained in paragraph 9 (the "<u>Mutual Releases</u>") and the other provisions applicable to the Limited Parties pursuant to paragraphs 15(d) and 15(e) of this Agreement, as applicable, are the result of negotiations between the Parties, and the Parties have cooperated in and/or consented to the drafting and preparation of such Mutual Releases and other applicable provisions, and have been advised by their respective attorneys regarding the terms, effects, and consequences of such Mutual Releases and other applicable provisions.  Accordingly, such Mutual Releases and other provisions applicable to the Limited Parties shall be construed fairly and not in favor or against any Party, regardless of which Party drafted or participated in the drafting of their terms and shall not be construed as having been drafted solely by or on behalf of any one or more of the Parties hereto.

25.     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and applicable federal laws.

26.     <u>Jurisdiction of the Court</u>.  Each Party agrees that the Bankruptcy Court shall have exclusive jurisdiction for the purposes of interpreting and/or enforcing all of the terms and provisions of this Agreement including, but not limited to, granting any relief sought for a breach of or default under this Agreement and the entry of any orders, judgments, liens, garnishments, or other processes needed for the Eventide Estate to enforce this Agreement or otherwise collect the amounts due under this Agreement.

27.     <u>Advice of Counsel</u>.  The Parties, and each of them, represent that advice of legal counsel has been obtained by each Party prior to entering into this Agreement or that each Party has had the opportunity to obtain advice of counsel and has chosen not to do so.  Specifically, the Parties, and each of them, represent that they have had the opportunity to select and retain their own attorneys, experts and/or consultants to inspect, analyze, and advise them regarding the nature, extent and cause of the claims asserted and the appropriate prosecution thereof which are the subject of this Agreement.  In entering into this Agreement, each party represents that it has not been induced to enter into this Agreement by reliance on the opinions, representations, conclusions, or contentions of the other or of the other's counsel or experts.

28.     <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the Parties relating to the rights and obligations contained herein and any representations, negotiations or agreements between the Parties are merged into and superseded by this Agreement.  Aside from the rights and obligations of the Settlement Parties pursuant to this

Agreement, the Settlement Approval Order, and the Condemnation Judgment, no other relationship shall remain between the Tribal Released Parties and the Eventide Released Parties.

29.   <u>Amendment</u>.  No subsequent modification or amendment between or among the Parties, or any of them, shall be effective, unless in writing and signed by the Parties to this Agreement who are or may be affected by any such subsequent modification or amendment hereto.  No Party may rely on any oral amendment of this Agreement.  The Settlement Parties may amend this Agreement in writing without the joinder of the Limited Parties so long as such amendment does not affect the rights of the Limited Parties.

30.   <u>Binding</u>.  This Agreement shall be binding upon the heirs, representatives, executors, administrators, assigns, insurers, trustees, predecessors, and successors of the Parties, including without limitation, any post-confirmation person or entity created or assigned rights or powers under 11 U.S.C. §§ 1123 or 1129 or otherwise pursuant to a chapter 11 plan for Eventide, BWH, or Martorello and any chapter 7 trustee for the bankruptcy estates for Eventide, BWH, or Martorello. This Agreement shall be binding on the Parties regardless of whether the Eventide Bankruptcy Case or the Martello Bankruptcy Case is dismissed or closed.

31.   <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, including by facsimile/electronic transmission and .pdf, all of which shall be considered the same as if a single document shall have been executed and shall become effective when such counterparts have been signed by each of the Parties and delivered to the representatives of each of the Parties.

32.   <u>Headings</u>.  The headings in this Agreement are inserted for convenience only and shall not affect the interpretation of this Agreement.

33.   <u>Notices</u>.  All notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been properly given, made, or sent:  (i) when personally delivered by a party hereto, or by messenger, to a person over the age of 18 years at the address listed below, or (ii) by next day express courier, or (iii) upon delivery or refusal of same after having been sent by Federal Express or registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to the Tribe:              Lac Vieux Desert Band of Lake Superior Chippewa Indians
                             Attn: James Willams, Jr., Chairman
                             N4698 US Highway 45
                             Watersmeet, MI 49969

                             *With a copy to:*

                             Karrie Biron
                             Attorney General
                             Lac Vieux Desert Band of Lake Superior
                             Chippewa Indians
                             N4689 US Highway 45
                             Watersmeet, MI 48869

                             -and-

|  | Tanya Gibbs<br>Justin Gray<br>**MSHKAWZI LAW, LLP**<br>44 Cesar E. Chavez Ave. SW<br>Suite 250<br>Grand Rapids, MI 49503<br>Email: tgibbs@mshkawziaw.com<br>Email: jgray@mshkawzilaw.com |
|---|---|
| If to TED, BPL or Ascension: | [Big Picture Loans, LLC; Tribal Economic Development Holdings, LLC; and/or Ascension Technologies, LLC, as applicable]<br>Attn:  Co-Managers<br>E23970 Pow Wow Trail,<br>Watersmeet, MI 49969 |
|  | *With a copy to:* |
|  | Toby Gerber<br>Michael Berthiaume<br>NORTON ROSE FULBRIGHT US LLP<br>2200 Ross Ave., Suite 3600<br>Dallas, TX 75201<br>Email: toby.gerber@nortonrosefulbright.com<br>Email: michael.berthiaume@nortonrosefulbright.com |
|  | -and- |
|  | Tanya Gibbs<br>Justin Gray<br>**MSHKAWZI LAW, LLP**<br>44 Cesar E. Chavez Ave. SW<br>Suite 250<br>Grand Rapids, MI 49503<br>Email: tgibbs@mshkawzilaw.com<br>Email: jgray@mshkawzilaw.com |
| If to the Eventide Estate: | Eventide Credit Acquisitions, LLC<br>c/o Daniel J. Sherman, Collection Agent<br>**SHERMAN & YAQUINTO, LLP**<br>509 N. Montclair Avenue<br>Dallas, TX  75208 |
|  | *With a copy to:* |

---

J. Robert Forshey
Jeff Prostok
Suzanne K. Rosen
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76012
Email:  bforshey@forsheyprostok.com
Email:  jprostok@forsheyprostok.com
Email:  srosen@forsheyprostok.com

-and-

Robin Phelan
**PHELANLAW**
4214 Woodfin Drive
Dallas, Texas 75220
Email:  robin@phelanlaw.org

or to such other or additional address as any Party shall have specified by written notice to the others in accordance with this paragraph.

34.     **THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT.**

35.     <u>Effective Date</u>.  The Effective Date of this Agreement (the "<u>Effective Date</u>") is the date upon which both (i) the Bankruptcy Court has entered the Settlement Approval Order, and (ii) the LVD Tribal Court has entered the Condemnation Judgment.

**The undersigned hereby certify that they have read and fully understand all of the terms, provisions, and conditions of this Agreement and have executed this Agreement voluntarily.**

**[SIGNATURES ON FOLLOWING PAGE]**

Execution Version

**SETTLEMENT PARTIES:**

LAC VIEUX DESERT BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS

By: _____

Name: James Williams Jr.
Title:   Chairman
Dated:  October 17, 2024

BIG PICTURE LOANS, LLC

By: _____

Name: Michelle Hazen
Title:   Co-Manager and CEO
Dated:  October 17, 2024

EVENTIDE CREDIT ACQUISITIONS, LLC, individually
and as debtor-in-possession and estate representative
for the bankruptcy estate of Eventide Credit
Acquisitions, LLC

By: _____

Name: Matthew B. Martorello
Title:   Manager
Dated:  October ___, 2024

Execution Version

**SETTLEMENT PARTIES:**

**LAC VIEUX DESERT BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS**

By: _____

Name: James Williams Jr.
Title:   Chairman
Dated:  October ___, 2024

**BIG PICTURE LOANS, LLC**

By: _____

Name: Michelle Hazen
Title:   Co-Manager and CEO
Dated:  October ___, 2024

**EVENTIDE CREDIT ACQUISITIONS, LLC, individually
and as debtor-in-possession and estate representative
for the bankruptcy estate of Eventide Credit
Acquisitions, LLC**

By: _____

Name: Matthew B. Martorello
Title:   Manager
Dated:  October 17, 2024

---

LIMITED PARTIES:

TRIBAL ECONOMIC DEVELOPMENT HOLDINGS, LLC

By: _____

Name: Michelle Hazen
Title:    Co-Manager
Date:   October _7_, 2024

ASCENSION TECHNOLOGIES, LLC

By: _____

Name: Michelle Hazen
Title:    Co-Manager
Dated: October _7_, 2024

BWH TEXAS, LLC, individually and as debtor-in-
possession and estate representative for the
bankruptcy estate of BWH Texas, LLC

By: _____

Name:
Title:
Dated:  October ___, 2024

MATTHEW B. MARTORELLO, individually and as a
debtor-in-possession and estate representative for the
bankruptcy estate of Matthew B. Martorello

_____

Dated:  October __, 2024

**LIMITED PARTIES:**

**TRIBAL ECONOMIC DEVELOPMENT HOLDINGS, LLC**

By: _____

Name: Michelle Hazen
Title:   Co-Manager
Date:   October ___, 2024

**ASCENSION TECHNOLOGIES, LLC**

By: _____

Name: Michelle Hazen
Title:   Co-Manager
Dated:  October ___, 2024

**BWH TEXAS, LLC, individually and as debtor-in-possession and estate representative for the bankruptcy estate of BWH Texas, LLC**

By: _____

Name:  Matthew B. Martorello
Title:    President of Liont, LLC, the Manager of BWH Texas, LLC
Dated:  October 17 , 2024

**MATTHEW B. MARTORELLO, individually and as a debtor-in-possession and estate representative for the bankruptcy estate of Matthew B. Martorello**

_____

Dated:  October 17, 2024

---

**BROPHY & BLAND, PLLC**

By: _____

Name: <u>Joseph F. Brophy</u>

Title:    <u>Managing Partner</u>

Dated:  October 17, 2024

**JOSEPH BROPHY**

_____

Dated:  October <u>1 7</u> ,  2024

Execution Version

**LOEB & LOEB, LLP**

By: _____

Name: Michael P. Zweig, Esq.

Title: General Counsel

Dated: October 12, 2024

**BERNARD R. GIVEN, II**

_____

Dated: October __, 2024

L:\JPROSTOK\Eventide Credit Acquisitions (6075)\Settlement\Settlement Agreement 10.17.2024 Execution Version.docx

Execution Version

**LOEB & LOEB, LLP**

By: _____

Name: _____

Title: _____

Dated: October ___, 2024

**BERNARD R. GIVEN, II**



_____

Dated: October 17, 2024

L:\JPROSTOK\Eventide Credit Acquisitions (6075)\Settlement\Settlement Agreement 10.17.2024 Execution Version.docx

**EXHIBIT A**
**Settlement Agreement and Release**

| Payments due by BPL and LVD, jointly and severally, under Settlement Agreement | | | |
|---|---|---|---|
| Date | Amount | Interest | Total |
| Within 3 Days of Order Approving Settlement Agreement | 1,500,000.00 | NA | $1,500,000.00 |
| April 1, 2025 | 1,000,000.00 | NA | $1,000,000.00 |
| | Total lump sum payments: | | $2,500,000.00 |
| | Remaining Amount to be paid over 48 months at 6% interest pursuant to the schedule below | | $14,386,983.71 |

| Date | Month | Amount | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 11/1/2024 | 1 | 322,916.67 | 23,368.55 | 299,548.12 | 14,108,426.91 |
| 12/1/2024 | 2 | 322,916.67 | 43,500.98 | 279,415.69 | 13,829,011.22 |
| 1/1/2025 | 3 | 322,916.67 | 42,639.45 | 280,277.22 | 13,548,734.00 |
| 2/1/2025 | 4 | 322,916.67 | 41,775.26 | 281,141.41 | 13,267,592.59 |
| 3/1/2025 | 5 | 322,916.67 | 40,908.41 | 282,008.26 | 12,985,584.33 |
| 4/1/2025 | 6 | 322,916.67 | 40,038.89 | 282,877.78 | 12,702,706.55 |
| 5/1/2025 | 7 | 322,916.67 | 39,166.68 | 283,749.99 | 12,418,956.56 |
| 6/1/2025 | 8 | 322,916.67 | 38,291.78 | 284,624.89 | 12,134,331.67 |
| 7/1/2025 | 9 | 322,916.67 | 37,414.19 | 285,502.48 | 11,848,829.19 |
| 8/1/2025 | 10 | 322,916.67 | 36,533.89 | 286,382.78 | 11,562,446.41 |
| 9/1/2025 | 11 | 322,916.67 | 35,650.88 | 287,265.79 | 11,275,180.62 |
| 10/1/2025 | 12 | 322,916.67 | 34,765.14 | 288,151.53 | 10,987,029.09 |
| 11/1/2025 | 13 | 322,916.67 | 33,876.67 | 289,040.00 | 10,697,989.09 |
| 12/1/2025 | 14 | 322,916.67 | 32,985.47 | 289,931.20 | 10,408,057.89 |
| 1/1/2026 | 15 | 322,916.67 | 32,091.51 | 290,825.16 | 10,117,232.73 |

**EXHIBIT A**
## Settlement Agreement and Release

| | | | | | |
|---|---|---|---|---|---|
| 2/1/2026 | 16 | 322,916.67 | 31,194.80 | 291,721.87 | 9,825,510.86 |
| 3/1/2026 | 17 | 322,916.67 | 30,295.33 | 292,621.34 | 9,532,889.52 |
| 4/1/2026 | 18 | 322,916.67 | 29,393.08 | 293,523.59 | 9,239,365.93 |
| 5/1/2026 | 19 | 322,916.67 | 28,488.04 | 294,428.63 | 8,944,937.30 |
| 6/1/2026 | 20 | 322,916.67 | 27,580.22 | 295,336.45 | 8,649,600.85 |
| 7/1/2026 | 21 | 322,916.67 | 26,669.60 | 296,247.07 | 8,353,353.78 |
| 8/1/2026 | 22 | 322,916.67 | 25,756.17 | 297,160.50 | 8,056,193.28 |
| 9/1/2026 | 23 | 322,916.67 | 24,839.93 | 298,076.74 | 7,758,116.54 |
| 10/1/2026 | 24 | 322,916.67 | 23,920.86 | 298,995.81 | 7,459,120.73 |
| 11/1/2026 | 25 | 322,916.67 | 22,998.96 | 299,917.71 | 7,159,203.02 |
| 12/1/2026 | 26 | 322,916.67 | 22,074.21 | 300,842.46 | 6,858,360.56 |
| 1/1/2027 | 27 | 322,916.67 | 21,146.61 | 301,770.06 | 6,556,590.50 |
| 2/1/2027 | 28 | 322,916.67 | 20,216.15 | 302,700.52 | 6,253,889.98 |
| 3/1/2027 | 29 | 322,916.67 | 19,282.83 | 303,633.84 | 5,950,256.14 |
| 4/1/2027 | 30 | 322,916.67 | 18,346.62 | 304,570.05 | 5,645,686.09 |
| 5/1/2027 | 31 | 322,916.67 | 17,407.53 | 305,509.14 | 5,340,176.95 |
| 6/1/2027 | 32 | 322,916.67 | 16,465.55 | 306,451.12 | 5,033,725.83 |
| 7/1/2027 | 33 | 322,916.67 | 15,520.65 | 307,396.02 | 4,726,329.81 |
| 8/1/2027 | 34 | 322,916.67 | 14,572.85 | 308,343.82 | 4,417,985.99 |
| 9/1/2027 | 35 | 322,916.67 | 13,622.12 | 309,294.55 | 4,108,691.44 |
| 10/1/2027 | 36 | 322,916.67 | 12,668.47 | 310,248.20 | 3,798,443.24 |
| 11/1/2027 | 37 | 322,916.67 | 11,711.87 | 311,204.80 | 3,487,238.44 |
| 12/1/2027 | 38 | 322,916.67 | 10,752.32 | 312,164.35 | 3,175,074.09 |
| 1/1/2028 | 39 | 322,916.67 | 9,789.81 | 313,126.86 | 2,861,947.23 |

**<u>EXHIBIT A</u>**
**Settlement Agreement and Release**

| | | | | | |
|---|---|---|---|---|---|
| 2/1/2028 | 40 | 322,916.67 | 8,824.34 | 314,092.33 | 2,547,854.90 |
| 3/1/2028 | 41 | 322,916.67 | 7,855.89 | 315,060.78 | 2,232,794.12 |
| 4/1/2028 | 42 | 322,916.67 | 6,884.45 | 316,032.22 | 1,916,761.90 |
| 5/1/2028 | 43 | 322,916.67 | 5,910.02 | 317,006.65 | 1,599,755.25 |
| 6/1/2028 | 44 | 322,916.67 | 4,932.58 | 317,984.09 | 1,281,771.16 |
| 7/1/2028 | 45 | 322,916.67 | 3,952.13 | 318,964.54 | 962,806.62 |
| 8/1/2028 | 46 | 322,916.67 | 2,968.65 | 319,948.02 | 642,858.60 |
| 9/1/2028 | 47 | 322,916.67 | 1,982.15 | 320,934.52 | 321,924.08 |
| 10/1/2028 | 48 | 322,916.51 | 992.43[1] | 321,924.08 | 0.00 |
| **TOTAL** | | 15,500,000.00 | 1,092,024.97 | 14,407,975.03 | |

L:\JPROSTOK\Eventide Credit Acquisitions (6075)\Settlement\DRAFT Settlement Agreement - Exhibit A ($14.38M) 10.17.24.docx

---

[1] The final interest payment has been reduced by $0.16 so that total payment of principal and interest on the $13,780,135 amount does not exceed $15,500,000.