# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY, et al,

plaintiffs,

versus                    3:18CV406

BIG PICTURE LOANS, LLC, et al,

defendants,

and

LULA WILLIAMS, et al,

plaintiffs

versus                    3:17CV461

BIG PICTURE LOANS, LLC, et al,

defendants


Before:  HONORABLE ROBERT E. PAYNE
Senior United States District Judge


MOTIONS HEARING


October 18, 2024

Richmond, Virginia


GILBERT F. HALASZ
Official Court Reporter
U. S. Courthouse
701 East Broad Street
Richmond, VA 23219

APPEARANCES

KELLY, GUZZO, PLC
by: Kristi Cahoon Kelly, Esq.
Drew David Sarrett, Esq.
for the Plaintiffs

SANDS ANDERSON
by: Cullen Seltzer, Esq.
LOEB & LOEB
by:  John D. Taliaferro, Esq.
BROPHY & BLAND
by: Charlie Bland, Esq.
for Matt Martorello

JACKSON LEWIS
by: William Jackson, Esq.
for Rebecca Martorello

1        THE CLERK:  Case number 3:18 CV 406 Renee

2   Galloway, et al versus Big Picture Loans, LLC, et

3   al.

4        Case 3:17 CV 461.  Lula Williams, et al versus

5   Big Picture Loan, LLC, et al.

6        The plaintiffs are represented by Kristi Kelly

7   and Drew Sarrett.

8        The defendant Matt Martorello is represented by

9   John Taliaferro, Cullen Seltzer, Charlie Bland.

10        Defendant Rebecca Martorello is represented by

11   Billy Jackson.

12        Are counsel ready to proceed?

13        MS KELLY:  Plaintiffs are.

14        MR. JACKSON:  Ms Martorello is, Your Honor.

15        MR BLAND:  Mr. Martorello is, Your Honor.

16        THE COURT:  Mr. Martorello is not here?

17        MR BLAND:  Mr. Martorello is not here today.

18        THE COURT:  Ms Martorello is here.

19        MR. JACKSON:  She is here, Your Honor.

20        THE COURT:  All right.

21        Well, as I understand it, the structural basis

22   for the proposed settlement, which was to have a

23   final approval hearing on soon, has collapsed.

24        And there is a pending bankruptcy for Mr.

25   Martorello.

1       The final approval is set for October the 28th.

2       Did notices and so forth go out?  Where do we

3   stand on all that?  That is the first thing is how

4   to deal with that issue in view of the fact that the

5   predicates for approval as specified in the

6   agreement and the order have not and will not occur

7   at least in the order, in the time frame that they

8   are to occur based on the documents.

9       So where do we stand on the settlement approval

10  hearing on October 28th?

11      MS KELLY:  Judge, Kristi Kelly on behalf of the

12  plaintiff in the class.  So to answer Your Honor's

13  question, notice was sent out.  We provided a

14  declaration about the notice process when we filed

15  our paper work in support of final approval of the

16  settlement.

17      THE COURT:  When did the notice go out?

18      MS KELLY:  It went out, I believe it was over

19  the summer.  And the deadlines to opt out and object

20  have passed.  Class members were notified.  My

21  office and and my co-counsel's office have been in

22  communication with the class members providing them

23  their estimated the settlement proceeds.

24      THE COURT:  Were there any opt outs?

25      MS KELLY:  There were some opt outs, Judge.

1   Hold on a second.

2        THE COURT:  When was the notice issued?

3        MS KELLY:  I believe it was issued the --

4        THE COURT:  Get to work over there, Mr.

5   Sarrett, and look it up while she is talking.

6        MR. SARRETT:  I am looking it up, Your Honor.

7        THE COURT:  Thank you.

8        MS KELLY:  It was in June or July, Judge.  But

9   I am not sure of the exact --

10       THE COURT:  How many opt outs were there, and

11   when were they filed?

12       You can look that up.

13       Go ahead with your presentation.

14       MS KELLY:  Judge, if Your Honor --

15       THE COURT:  Were objections filed?

16       MS KELLY:  There was one objection that was

17   filed.  We filed a response to that objection this

18   Monday.  I have personally spoken with the objector.

19   And I can represent to The Court that his main gripe

20   is that Big Picture withdrew funds from his account

21   and has an issue with his bank and Big Picture, but

22   he also would like to obtain more money from the

23   settlement.  So that is his objection position, but

24   we did file our response to the objection on Monday.

25       THE COURT:  All right.

1        MS KELLY:  So, Judge, in the settlement

2    agreement, as you may be aware the parties were with

3    Judge Colombell yesterday --

4        THE COURT:  Yes.

5        MS KELLY:  -- to try to work through issues

6    relating to the lack of any non-binding indications

7    of interest that were received to purchase the

8    shares.  And we spent at least a few hours with

9    Judge Colombell trying to work through issues so

10   that we could jointly propose an extension of time

11   to see if there would be a way for the shares to be

12   sold so that these class members can get paid.

13       I can represent to Your Honor that the

14   plaintiff believes a brief extension is appropriate,

15   but we were not able to agree to certain conditions

16   for that extension.  But we do believe --

17       THE COURT:  Extension for what?

18       MS KELLY:  To receive any bids from ███████.

19       THE COURT:  Do what?

20       MS KELLY:  Pardon?

21       THE COURT:  Brief extension to do what?

22       MS KELLY:  To receive any bids for the shares

23   of ████████.  We believe that the best chances of

24   getting this case resolved is to have a brief

25   extension of time to get a bid so that there are

1    funds to pay these class members.

2        THE COURT:  What reason is there to believe

3    that anybody will submit a bid, given that they have

4    had all this time to submit a bid and nobody

5    submitted a bid?

6        What reason is there to believe that that is a

7    viable course of action?

8        Excuse me a minute.

9        One moment.  All right.  Go ahead.  I don't

10   understand the reason why we have any hope that this

11   process will do anything if given more time to

12   mature.  So I would like to understand that.

13   Because there are alternative resolution ways to

14   resolve this case moving forward.  To begin with,

15   there are pending motions to repatriate assets that

16   are ripe and ready to be dealt with.

17       MS KELLY:  Judge --

18       THE COURT:  I believe that I asked you all to

19   research, and you can check and see that there is

20   some authority that not withstanding the pendency of

21   the bankruptcy considering that these assets are not

22   in the hands of the person who is taking bankruptcy,

23   that The Court can go forward with the repatriation

24   process.

25       There is also the alternative of communicating

1   with the bankruptcy court.  And it is not unheard of

2   that where an antecedent case is pending and it has

3   reached a place where it can be dealt with at a

4   reasonable way, that the bankruptcy court will take

5   that matter as an adversary proceeding and it will

6   proceed in the court where it is pending.

7        Ordinarily the proper way to deal with that is

8   for me to communicate, or for all you to tell me if

9   you are interested in that, and for me to

10  communicate with the bankruptcy judge, for I do not

11  wish to intrude upon the jurisdiction of the

12  bankruptcy court.  But it is not at all unusual for

13  federal courts in the district and the bankruptcy

14  courts to work together where there is a common --

15  where it makes sense efficiently to do so even

16  though they are not in the same district.

17       That is not unusual, and it has been done

18  before.  But I am interested in getting things

19  moving.

20       MS KELLY:  Judge, and I as class counsel I

21  completely agree and that is what we want.  I would

22  propose this, Judge, if you can hear out what class

23  counsel thinks would be the best course of action.

24       We do agree that Mr. Martorello's filing of

25  bankruptcy in the middle of this process was a death

1   knell for the sale of the ████████ shares, because

2   he is --

3       THE COURT:  It had to be.

4       MS KELLY:  He is the founder of this company.

5       THE COURT:  He is going to buy it.

6       MS KELLY:  Yes, he is the founder of this

7   company for which we are trying to sell shares to

8   resolve this case.  And any prudent buyer is going

9   to think twice about buying a company where the

10  founder is bankrupt, right?

11      THE COURT:  I wouldn't think they would think

12  twice.  I think they would think once, and that

13  would be the end of it.

14      MS KELLY:  So it was a real surprise, shock,

15  and it was very disheartening for plaintiffs'

16  counsel to see about the filing and learn about it

17  through ECF.  And it caused a lot of concern for us

18  about the viability of moving forward.

19      With that being said --

20      THE COURT:  I have an interest in that topic

21  that I believe needs to get pursued as part of the

22  agenda.

23      This Court was invited to do certain things

24  with the knowledge of Mr. Martorello.  At the time

25  it seems to me nobody mentioned to me the

1   possibility that Mr. Martorello would take

2   bankruptcy, and in so doing render most unlikely, if

3   not an utter nullity, the likelihood of implementing

4   what people in the public were told had the

5   imprimatur of a District Court as a logical way to

6   do things on the premise and assumption that it

7   would not be frustrated by any bankruptcy.  To begin

8   with, there is a question about when these

9   discussions about Mr. Martorello's bankruptcy ever

10  began, and whether this Court has been induced to

11  act improperly, or inappropriately by virtue of

12  circumstances that are highly suspect, particularly

13  given Mr. Martorello's conduct in this case and the

14  fact that he has been adjudicated to be untruthful

15  and confirmed as an untruthful person by the Fourth

16  Circuit.  So The Court has an interest in

17  ascertaining exactly how that bankruptcy came to

18  pass in perspective of the timing of it.  It may be

19  that it is utterly innocent, and circumstances

20  entirely arose after the -- after the settlement.

21  The Court was told to, and advised to issue orders

22  in the settlement of the case, and that there wasn't

23  anything inappropriate at all.  But it is also

24  somewhat suspicious under the circumstances.

25      MS KELLY:  Judge --

1      THE COURT:  So, I need to hear from you all

2   about what you all know about that.

3      MS KELLY:  So, yes.  So plaintiffs' counsel,

4   class counsel were totally in the dark.  We had

5   communication and ZOOM calls with Mr. Martorello's

6   counsel and Judge Colombell on at least two

7   occasions, two occasions that week that he filed for

8   bankruptcy.  It was never once mentioned to us that

9   he intended to file for bankruptcy.  Judge, I think

10   that there is a lot of things that --

11      THE COURT:  When was the bankruptcy filing made

12   in respect to the filing of the motion in this case

13   upon their approval?  Number 648 was filed May 21,

14   2024.  When was the bankruptcy filing?

15      MS KELLY:  It was filed on September 20th.

16      THE COURT:  All right.

17      MS KELLY:  Which is just one month --

18      THE COURT:  And a motion for final approval was

19   filed on October 1 --

20      MS KELLY:  That's right.

21      THE COURT:  -- of 2024.

22      MS KELLY:  Judge --

23      THE COURT:  All right.

24      MS KELLY:  -- I want to first try to offer a

25   productive compromise for the class, and then I have

1    some, class counsel has some suggestions on what we

2    think would be an appropriate path forward if Your

3    Honor is willing to --

4        THE COURT:  That is why I asked you to be here.

5        MS KELLY:  Okay.

6        So, we think that a brief time frame to see if

7    any bids will come in is appropriate because that

8    will also give us time to file motions in the

9    bankruptcy case to lift the stay so that Your Honor

10   can decide the pending motions as to Mr. Martorello

11   since they were properly filed before this court if

12   a settlement does not go through.  We also intend to

13   file a motion to confirm that the RICO judgment

14   would not be discharged pursuant to Mr. Martorello's

15   bankruptcy filing.  There is ample case law to

16   suggest that RICO conduct is non dischargeable.  It

17   is considered like mail and wire fraud are regularly

18   considered false pretenses, and that is a non

19   dischargeable course of conduct under the bankruptcy

20   code.  So we intend to get that on file right away

21   during this time frame.  And also seek to lift the

22   stay so that this Court can have the jurisdiction to

23   decide those motions.  The other --

24       THE COURT:  This Court as the jurisdiction.

25       MS KELLY:  That's correct.  Sorry, Judge.

1      THE COURT:  But the jurisdiction, the exercise

2   of that jurisdiction is stayed under the bankruptcy

3   authorities.  And you are saying you don't think

4   that there is any independent authority to proceed

5   without the approval of the bankruptcy court.  So

6   you want time to file before the bankruptcy court?

7      MS KELLY:  We are not -- we don't, we do not

8   contented that, Judge, because as you properly

9   noted, Mr. Martorello has said, none of these assets

10   that we are seeking are his.  They are not listed in

11   his schedule.  They are not anywhere in his

12   bankruptcy filing.  And so the assets that we are

13   seeking to repatriate, the fraudulent transfer that

14   we are seeking to avoid, are not listed in Mr.

15   Martorello's schedules, so as far as we are

16   concerned it shouldn't be a problem for us to

17   proceed.

18      But, we do think it would be prudent to seek to

19   lift the stay with that in mind so that there is no

20   excess motions practice by the defendant in this

21   case.

22      Because we just think that would be the most

23   prudent practice.  We don't disagree that none of

24   these assets are listed on his schedule or are

25   claimed in statements under penalty of perjury to be

1   Mr. Martorello's.

2       Additionally --

3       THE COURT:  What about the assets that are the

4   subject of ECF number 1409, plaintiff's motion to

5   repatriate foreign assets in 3:17 461 and the

6   supplemental briefing in that case about the

7   proposed asset freeze order, 1456 dash one.  And

8   statement of position about known transfers made

9   during the pendency of the case, 1454?

10      MS KELLY:  Yes, Judge, and also docket 1491,

11  that is plaintiffs' motion to set aside all

12  transfers and conveyances.

13      THE COURT:  1491?

14      MS KELLY:  Yes.  Yes, Judge.

15      That is a motion that plaintiffs believe we

16  could file in the Galloway matter as to Ms

17  Martorello because she received certain transfers.

18      THE COURT:  1491 in what case?

19      MS KELLY:  It is in the same case, Judge.  It

20  is in Williams.

21      THE COURT:  Seventeen CV 461?

22      MS KELLY:  Correct.

23      THE COURT:  Okay.  You filed that?

24      MS KELLY:  It is not filed in another case, it

25  is just filed in 3:17 461 right now.

1        THE COURT:  Which you are going to file?

2        MS KELLY:  We certainly can file it next week

3   if we needed to in the case where Ms Martorello is

4   because a lot of those transfers --

5        THE COURT:  Where is that case?  Is that --

6        MS KELLY:  Sorry, Judge.  That is 3:19 CV 314,

7   I believe.

8        THE COURT:  That is commonly referred to as

9   Galloway what?

10       MS KELLY:  It is Galloway versus Justin

11   Martorello.

12       THE COURT:  Is Ms Martorello a defendant in

13   that case?

14       MS KELLY:  Yes, Judge.

15       THE COURT:  Okay.  You are going to file that

16   motion, number 1491, in 17 461.  You are going to

17   file that in 3:19 CV 314?

18       MS KELLY:  Yes.  But we would like to wait to

19   file the motion until after a brief extension of the

20   settlement agreement because I can represent that Ms

21   Martorello has been here, she has been engaged in

22   trying to get something done.  And she is willing to

23   come and attend another settlement conference on

24   November 14 with Judge Colombell.

25       THE COURT:  Does she have any authority to do

1    that without Mr. Martorello?

2        MS KELLY:  Well, Judge, I think --

3        THE COURT:  I accept your representation that

4    she is proceeding in good faith, but even people

5    proceeding in good faith have limitations depending

6    upon extrinsic circumstances.  It may well be that

7    the extrinsic circumstances here may based on the

8    information accumulated in this case over several

9    years, these cases, need Mr. Martorello himself.  We

10   don't have any indication that he is interested in

11   being here and helping try to settle the case or

12   solve the problems --

13       MS KELLY:  But --

14       THE COURT:  -- or not?

15       MS KELLY:  You know, I will say that

16   Mr. Martorello's proposal to participate in the

17   subsequent settlement conference is unacceptable to

18   plaintiff.  That is all I will say, because it was

19   part of a settlement communication.

20       However, I believe, Your Honor has authority to

21   order the trustee, the current trustee of the

22   █████████  shares to participate in an in-person

23   settlement conference on November 13th.

24       That trustee --

25       THE COURT:  Is that person represented here

1   today?

2        MS KELLY:  He is not.  But he is --

3        THE COURT:  Who represents that person?

4        MS KELLY:  It is my understanding he does not

5   have counsel.  But he is a business partner, former

6   business partner, of Mr. Martorello.  He was a -- he

7   founded a company with Mr. Martorello that is

8   actually listed in our ECF 1454 regarding the

9   unlawful asset transfers we have identified called

10  Green Tea Technology.  But in the settlement

11  agreement, and in section --

12       THE COURT:  What page?

13       MS KELLY:  Three point five.  It is at ECF, The

14  Court document, 653 dash one in 3:19 CV 314.

15       THE COURT:  Settlement agreement is 652 dash

16  one.  Paragraph is what?

17       MS KELLY:  It is three point five.  It is page

18  15 of 71.

19       THE COURT:  All right.

20       Where are you reading from?  In what paragraph?

21       MS KELLY:  It is three pinot five, called

22  trustee engagement.  If you go down into the middle

23  of the page, subsection three.

24       It is actually not sub, it is number three.

25       THE COURT:  I have a 652 dash one, page 13

 1   paragraph five, trustee engagement.  Now, where do

 2   you want me to go?

 3        MS KELLY:  Do you see where there is a section

 4   three?

 5        THE COURT:  I see there is a subparagraph

 6   parentheses one, two, and three.  And three --

 7   actually --

 8        MS KELLY:  Sorry.

 9        THE COURT:  The trustees consent to participate

10   in monthly updates with Judge Colombell.  Is that

11   what you are talking about?

12        MS KELLY:  Yes.

13        Today neither Judge Colombell nor plaintiffs'

14   counsel have heard from the trustee at all regarding

15   any monthly updates.  So we believe that the trustee

16   consented and agreed to this provision, and could be

17   required to participate in the in-person update

18   slash settlement conference with Judge Colombell on

19   November 13, because it is my understanding that the

20   Martorellos believe it is the trustee who has the

21   discretion to determine whether to accept, and what

22   terms to settle for with the shares of ███████.

23        THE COURT:  Where did that come out?  Not in

24   anything in the papers that I have.

25        MS KELLY:  The trustee's position --

1      THE COURT:  I thought you said it was the

2   Martorello's position.

3      MS KELLY:  Right.  Judge, that is more of a

4   settlement communication.

5      THE COURT:  Not in any papers I have.

6      MS KELLY:  That's correct, Judge.

7      THE COURT:  All right.

8      MS KELLY:  But it is plaintiffs' counsel belief

9   that is an impediment to getting this deal over the

10  finish line because the trustee has not participated

11  in any manner so far in the settlement --

12     THE COURT:  The trustee is who?

13     MS KELLY:  He is one of Mr. Martorello --

14     THE COURT:  What is the name?

15     MS KELLY:  Anthony Tassone.

16     THE COURT:  How do you spell that?

17     MS KELLY:  Sorry.  I don't want to get it

18  wrong.  T-A-S-S-O-N-E.

19     THE COURT:  All right.

20     MS KELLY:  Mr. Sarrett has pointed out that in

21  the bankruptcy filing Mr. Martorello has asserted

22  that he does not control the trust, nor is he the

23  beneficiary, and that he is owed money pursuant to

24  the transfer of shares.  So he is agreeing that he

25  has no control over the trust or the trustee in that

1    statement in the bankruptcy court.

2         THE COURT:  Let's see.

3         So how do you spell this fellow's name?

4         MS KELLY:  T-A-S-S-O-N-E.

5         THE COURT:  Where is Mr. Tassone?

6         MS KELLY:  I believe in Chicago.  But am not

7    just not a hundred percent sure.

8         THE COURT:  What do you want me to do with him?

9         Don't tell me that they have all of these

10   millions of dollars in the trust and nobody knows

11   who the trustee is or where he is.  That somebody

12   knows that.  One of the people who would know, I

13   would think, would be a beneficiary because under

14   most trusts the trustee has to make reports

15   regularly to beneficiaries.  So some -- who are

16   beneficiaries?

17        MS KELLY:  So, it is my understanding that

18   initially the beneficiaries were Ms Martorello and

19   her children.  And then, of course, during the

20   pendency of this litigation there was a subsequent

21   transfer to the trust where Mr. Tassone is trustee.

22   And I believe those trusts, the beneficiaries are

23   just the children.  But I am not a hundred percent

24   sure.  Perhaps Mr. Jackson can speak to that and the

25   knowledge of the trustee.

1      THE COURT:  I am sure Ms Martorello knows who

2  is the trustee for her children.

3      MS KELLY:  Probably she will know where he

4  lives.

5      THE COURT:  Do you have documents by which the

6  trust changed from Ms Martorello to the trustee, to

7  the ███████ trust?

8      MS KELLY:  Yes.  It was a Wyoming company that

9  was created.  I don't know if Mr. Jackson or if

10  anyone from the defense --

11      THE COURT:  The transactions in this case are

12  not unlike those in the John Gresham novel The Firm.

13      MS KELLY:  So we know the trust names are BB&T

14  I and BB&T II.  And it is my understanding that the

15  children are the beneficiaries.  But I don't know

16  that we have received all of those documents in

17  discovery.  We just know --

18      THE COURT:  What all?  What documents?

19      MS KELLY:  The creation of the, the trust

20  creation documents and the transfer.

21      THE COURT:  Have you asked for them?

22      MS KELLY:  Yes, we have.  But, I think --

23      THE COURT:  In one of these cases?

24      MS KELLY:  It was in the post judgment

25  collection action in Williams.  I just don't

1   remember actually seeing it.  I might have, but

2   there have been a lot of them, but I just don't one

3   hundred percents remember that.

4        THE COURT:  If you want me to order somebody to

5   attend somewhere I have to know who they are, where

6   they are, and how to get jurisdiction over them.

7        MS KELLY:  Well, he signed a consent to agree

8   to participate in these updates pursuant to this

9   agreement.  And we have his consent signed as a

10  condition of moving forward with the settlement.  So

11  we could --

12       THE COURT:  Well, you could file a motion that

13  precipitates all this and get the relevant

14  information.

15       MS KELLY:  We will do that, Judge.

16       THE COURT:  How long do you want to proceed,

17  or -- then you have to file -- you have to -- you

18  tell me you are going to file a motion to lift the

19  stay as to the various motions here, 1491, 14 --

20       MS KELLY:  That motion has already been --

21       THE COURT:  -- 09.  And another one, the one I

22  just mentioned.  And that would be, those

23  supplemental briefs filed -- there were several

24  motions about repatriation and assets.  You are

25  going to file those?  And then you are going to file

1    a motion in the bankruptcy court to do what about

2    the RICO charge?

3        MS KELLY:  There would be, we are still

4    conferring with our local counsel there as to

5    whether it is just a motion.  But we believe it

6    might be like an adversary proceeding or declaratory

7    judgment proceeding to confirm that the RICO

8    judgment is not a judgment that can be discharged.

9    And we believe there is --

10       THE COURT:  Would that be something that you

11   would be asking the bankruptcy court there to have

12   this court determine or the bankruptcy court?

13       MS KELLY:  That would be in the bankruptcy

14   court for the bankruptcy court to determine.

15       But certainly this court has already made

16   numerous findings that we believe Mr. Martorello

17   would be bound by that would clearly meet any

18   threshold necessary to make the necessary findings

19   in that action.  And we don't see how those facts

20   can be changed at this point by Mr. Martorello.

21       THE COURT:  So what date do you want me to

22   extend out of what document, so I can know what

23   order to enter?

24       MS KELLY:  Judge, the plaintiff would agree to

25   extend the settlement agreement compliance deadline.

1        THE COURT:  Which deadline is that?  What page

2   of the settlement agreement am I amending?  That is

3   in settlement agreement 652 dash one in 3:19 314.

4   So I have that in front of me.

5        MS KELLY:  The deadline that we are seeking to

6   extend is the funding deadline of October 21st,

7   2024.

8        THE COURT:  Let's have the paragraph that we

9   are talking about.  I have 652 dash 1 in front of

10  me.

11       MS KELLY:  It is 3.7, liquidation of interest

12  in ███████ .

13       THE COURT:  Just a moment.

14       All right.  It says it must be completed, the

15  liquidation of the interests must be completed by no

16  later than October 21, 2024.  Is that the date you

17  want continued?

18       MS KELLY:  Yes, Judge.  That is the date that

19  we would like continued.

20       THE COURT:  Have you talked with other counsel,

21  and do they all agree with that?

22       MR. JACKSON:  Your Honor, Billy Jackson for

23  Rebecca Martorello.  We agree with that extension

24  with that date.

25       THE COURT:  To what date?

 1       MR. JACKSON:  To November 13, which is the, I

 2   think one of the only days Judge Colombell is

 3   available.  I can't speak for Mr. Martorello.

 4       THE COURT:  You are not his counsel.

 5       MR. JACKSON:  That is right.

 6       THE COURT:  Well, that would be a venture I

 7   wouldn't undertake either.  All right.  But his

 8   counsel is here.

 9       So, does he agree?

10       MR. BLAND:  Charlie Bland here for Mr.

11   Martorello, Your Honor.

12       THE COURT:  Yes, sir.

13       MR. BLAND:  Mr. Martorello would agree.  Let my

14   back up, Your Honor.  Mr. Martorello would agree to

15   a brief extension on that deadline as that is the

16   best opportunity to fully fund the settlement and to

17   reach a final resolution.

18       Now, Mr. Martorello's bankruptcy estate has

19   bankruptcy counsel.  That is Mr. Dan Winikka.

20       THE COURT:  Who?

21       MR. BLAND:  Mr. Dan Winikka, Your Honor.  That

22   is Mr. Martorello's bankruptcy estate's lawyer.

23       THE COURT:  They were invited to be here, I

24   think, and they chose not to be.

25       MR. BLAND:  Yes, Your Honor.

1          THE COURT:  So what point do you make?

2          MR. BLAND:  That Mr. Martorello and Mr. Winikka

3     will consent to a meeting here with Judge Colombell

4     provided that we, ███████ receives a bid that is

5     sufficient to fully fund the settlement agreement.

6     In an amount that is sufficient to plaintiffs'

7     counsel and to the plaintiffs' class.  If that is

8     the case, Mr. Martorello and Mr. Winikka are willing

9     to come here to Virginia to fully consummate the

10    deal.

11         THE COURT:  What do you need to do to

12    consummate the deal?

13         MR. BLAND:  Your Honor, the idea is to be here

14    together to work through any issues that arise in

15    connection with the bankruptcy, and do so with Judge

16    Colombell.

17         THE COURT:  All right.

18         So that is what Martorello agrees to?

19         MR. BLAND:  Yes, Your Honor.

20         THE COURT:  And anybody else got a dog in the

21    fight that I need to talk to?

22         MR. TALIAFERRO:  Mr. Taliaferro, Your Honor,

23    Mr. Martorello's counsel in the 18 465, I don't have

24    anything to add beyond what Mr. Bland said.

25         THE COURT:  All right.

1          Anything else from you?  Mr. Seltzer?

2          MR. SELTZER:  No, sir, Judge.

3          THE COURT:  You are counsel in what case?

4          MR. SELTZER:  Judge, in the Williams matter.  I

5     am local counsel for Mr. Bland.

6          THE COURT:  So the record is clear, that's all.

7          Do you object to that that condition?  You said

8     something earlier?

9          MS KELLY:  Yes, Judge, the condition that

10    Mr. Martorello will only participate if we agree to

11    whatever amount the shares get, even if it is less

12    than the $65 million number.  But we are --

13         THE COURT:  I didn't hear him say that.  I

14    thought he said sufficient to fund the settlement.

15         MS KELLY:  So it would have --

16         THE COURT:  To fund the settlement would be the

17    amount as appears in the settlement agreement I

18    interpreted.  Now, if I misunderstood that, I need

19    to be straightened out on that.

20         MS KELLY:  So Mr. Martorello's position is we

21    would only have a settlement conference if there was

22    an offer for at least $65 million.  For 50 percent.

23    But, there could be an offer for 80 percent of the

24    shares at 90 million, and that may only net 63

25    million dollars.  And in that case Mr. Martorello

1    wouldn't participate.  So to us, you know, if we

2    satisfy the terms of the settlement there is really

3    not much that would need to be done on November 13th

4    because we are almost there.  And we could simply

5    have a ZOOM call with Judge Colombell.

6        THE COURT:  But he said, I thought, that he,

7    Mr. Martorello and Winikka would meet if ███████

8    gets a bid sufficient to fund the settlement.  That

9    is what he just said.  He didn't say anything

10   about -- he just said the ultimate amount of the

11   settlement.  So if he got offers of what percent you

12   said, eighty percent that is funded it at 65 million

13   they would be here.

14       MS KELLY:  Well, if that is their

15   position then --

16       THE COURT:  That is what I understood him to

17   say.

18       MS KELLY:  Then I misunderstood him.

19       THE COURT:  Did I misunderstand you or not?

20       MR. BLAND:  Your Honor, that is correct.  There

21   is a fifty percent cap, Your Honor.  That was an

22   economic material term of the settlement agreement.

23       THE COURT:  I guess I have this question.

24       What is the machination going on here that I

25   see that if you get an offer of some kind you don't

1   want to come talk about it?  That is what I think I

2   am having difficulty understanding.  It bespeaks a

3   certain amount of confusion in my minted, and I

4   would like to have it clarified so I understand what

5   the dog in the fight is all about.

6       MR. BLAND:  Your Honor, I understand.  That is

7   the instruction that I have been given both by

8   Mr. Martorello and his bankruptcy counsel.

9       THE COURT:  Did you ask them why they were

10  taking that position?

11      MR. BLAND:  No, Your Honor.  This developed

12  this morning.  The Court should be aware as a result

13  of the bankruptcy filing automatic stay my

14  authorization is limited.  I want to be as helpful

15  and as candid as I can, consistent with being a way

16  that I make sure that I don't violate the rights of

17  the bankruptcy and the automatic stay.  So that is

18  an instruction that I have been given by

19  Mr. Martorello.

20      THE COURT:  I am coming to the conclusion

21  rather quickly that the conduct of Mr. Martorello

22  and his bankruptcy counsel are standing as an

23  obstruction to justice and the administration of

24  justice in this court.  And that they need to come

25  to reality.  And there is nothing -- they don't

1    forfeit anything by agreeing to come to talk about

2    something, that I know of.  It is a -- seems to me

3    to be a position that you can't explain, and I can't

4    understand, but that makes no sense to me when it is

5    presented as a -- in the fashion that operates as an

6    impediment to the resolution of a pending matter in

7    the court and has a consequence to it.  And that

8    consequence is the obstruction of the process.  If

9    there is a legitimate reason why they don't want to

10   be here I can understand that.  But I don't

11   understand it, and you haven't been able to express

12   it, and I gather that you are not authorized and

13   don't feel comfortable in your representation of Mr.

14   Martorello to speak that way.  I understand that is

15   a position that you have, and I respect that.  But

16   that doesn't change the fact that Mr. Martorello and

17   Mr. Winikka are acting in the way they are acting.

18        So it doesn't make any sense to me.  If I had

19   some understanding of why it was the way it was I

20   perhaps could deal with it in a different way.

21        But right now, I am of the view that this is

22   conduct that is not appropriately engaged in that is

23   standing in the way of resolving the matter.

24        So what do you want to do if they, Ms Kelly,

25   want to -- don't want to come unless the fifty

1    percent threshold is also established?

2        MS KELLY:  I think --

3        THE COURT:  Do you want to go forward with the

4    people, with the ███████ people and with Ms

5    Martorello, or not?

6        MS KELLY:  Judge, I think we do.  If

7    Mr. Jackson and Ms Martorello have been clear that

8    they want to see this through and they want to get

9    it done despite Mr. Martorello's conduct.  And we

10   believe them, that they want to get it done.  And we

11   think it is in the best interests of everyone to

12   give it that time to try to get it done.  We are

13   incredibly disappointed with Mr. Martorello's

14   conduct.  It is shocking and unbelievable to us.

15   But it is actually not shocking.  I shouldn't say

16   that, because, you know, we should know better by

17   now.  But we want to get the money for the class

18   members.  They are happy about it, they are

19   grateful.  They have expressed to us how much it

20   would mean to them and their families.

21       THE COURT:  I understand that.  But that is,

22   the feelings of desire of joy are not what is on the

23   table now.  It is the process of figuring out how to

24   penetrate an apparently impenetrable wealth wall,

25   and breaking down the matter so that it can in fact

1   proceed in a court of law.  That is what we are

2   looking for.  If they don't to settle it, that is

3   their business.  We can't do anything about that.

4   But we can adjudicate.  The interposition of the,

5   unexpected interposition of the bankruptcy of

6   Mr. Martorello is a very unusual circumstance

7   because it is being used to stand in the way of

8   assets, obtaining assets that he doesn't have any

9   control over and has eschewed any responsibility

10  for.  That can't be allowed to continue.  So we need

11  to move forward on several fronts to get the case so

12  that it is manageable and in the hands of the

13  judiciary in a manageable way, giving everybody

14  their process that they are due under the law.

15  Under whatever law it is.

16      So you want to extend that date on page 15

17  paragraph three point seven to November 13 --

18      MS KELLY:  Yes, Judge.  And we propose

19  having --

20      THE COURT:  -- 2024.

21      MS KELLY:  Yes.  And we propose at the

22  conclusion of that conference having a status

23  conference or something with Your Honor to report on

24  whether we were successful in a resolution, and if

25  not, set dates for depositions in the courthouse and

1   evidentiary, other evidentiary or motions hearings

2   for motions we will file in the interim.

3        THE COURT:  But also, are you going to file in

4   that time period the motion to lift the stay that

5   you were -- on these motions respecting assets here

6   so that they can proceed, and the motion to have an

7   adjudication that the RICO claims are not barred by

8   bankruptcy?

9        MS KELLY:  Yes.  I don't know that we will have

10  an adjudication on the -- whether the claims are

11  dischargeable or not.

12       THE COURT:  I am not talking about this.  I am

13  talking about filing by November.

14       MS KELLY:  We will definitely have it filed.

15  We have the motion to lift the stay already drafted.

16  Given The Court's position here, I understand that

17  that is a very urgent matter, and we will notice it

18  as an emergency hearing so we can get an expedited

19  hearing with the bankruptcy court in Texas on that

20  issue.

21       We will also file the motion to request the

22  full participation of Mr. Tassone pursuant to the

23  settlement agreement.

24       THE COURT:  When are you going to file that?

25       MS KELLY:  Could we have until the end of next

1   week, please?

2        THE COURT:  What is the date?

3        MS KELLY:  Twenty-fourth.  No.  Twenty-fifth.

4        THE COURT:  By October 25.  All right.

5        You are going to file the 1491 motion in 17 CV

6   416 in 3:19 341.  When are you going to do that?

7        MS KELLY:  So the 1491 motion, we can have that

8   filed by the 25th as well, Judge.  And --

9        THE COURT:  That is to be filed as a new motion

10   in 3:19 CV 314; is that right?

11        MS KELLY:  That's correct, Judge.

12        THE COURT:  All right.

13        Is there anything else that we need to do?

14        You talked about a status conference on

15   November 13th or 14th.  Let me look at that.

16        I am not here on the 13th or 14th.  I will be

17   back on the 15th.

18        MS KELLY:  Fifteenth works for plaintiff.

19        THE COURT:  I will expect the parties and

20   counsel to be here.  I am inviting Mr. Martorello

21   and his bankruptcy counsel to be here.  Advising

22   them that they run the risk that decisions might be

23   made that affect their business if they don't come

24   here to be represented.  That their appearance here

25   waives no rights that they have in the bankruptcy

1    proceedings or elsewhere.  But they are important

2    people based upon what I have heard today in

3    figuring out a way for the litigation, and the

4    litigation involves many people many, many cases, to

5    move forward.

6        We will meet on the 15th at 10:00 a.m.

7        You said you wanted to have a conference

8    respecting the various topics, and the topics were

9    what?

10       MS KELLY:  On the 15th?

11       THE COURT:  You mentioned inter alia deposition

12   schedules and what else?

13       MS KELLY:  That's correct, Judge.

14       If you recall, we were scheduled to take I

15   believe Mr. Martorello's deposition in the

16   courthouse, and also Ms Martorello's deposition.  We

17   would also want to take her as well, Judge.  We had

18   those scheduled.  Regarding the transfers, if we are

19   not able to get to a resolution, we will also, we

20   also think it would be appropriate --

21       THE COURT:  You don't want to take those

22   depositions on the 15th?  You want to schedule the

23   depositions?

24       MS KELLY:  Yes, Judge.

25       THE COURT:  I suggest you have an itinerary for

1    this meeting.  Get the itinerary to me by the 13th

2    of November so I understand what we are looking at

3    and can plan whatever it is that either side wishes

4    to discuss positively or negatively.

5          MS KELLY:  I understand, Judge.

6          Just so I understand so we can represent to the

7    bankruptcy court your position, is that you would

8    want confirmation whether or not the bankruptcy

9    court would lift the stay prior to that time so that

10   you could freely schedule whatever you need to

11   schedule?

12         THE COURT:  Yes.

13         MS KELLY:  Okay.

14         THE COURT:  Nothing would take place until I

15   heard the parties on the scheduling.  But their

16   papers are already here.

17         MS KELLY:  Right.

18         THE COURT:  There were testimonies set to be

19   heard.  And then the settlement occurred.  And then

20   the bankruptcy unexpectedly occurred.  So we need to

21   get the matter back on schedule.

22         MS KELLY:  Given your familiarity --

23         THE COURT:  I think it is the responsibility of

24   this Court to handle those matters in order that

25   cases pending here can move forward.  I also happen

1   to think that from what I have been able to discern

2   from the bankruptcy proceedings so far that it might

3   facilitate use of the bankruptcy court.

4       MS KELLY:  Yes, Judge.  Plaintiffs would agree

5   that given your extensive knowledge and familiarity

6   with these issues, and the facts given the

7   seven-year history of the case so far, that is

8   probably best to be determined here.

9       THE COURT:  All right.

10      Is there anything else that needs to be done

11  today by anybody?

12      MR. JACKSON:  Yes.  I will go first.

13      THE COURT:  Yes, sir.

14      MR. JACKSON:  This is billy Jackson for Rebecca

15  Martorello again.

16      One of the conditions of the settlement

17  agreement is that the proceedings, including the

18  bankruptcy proceeding, will be stayed during the

19  pendency of the agreement.  I ask that if this were

20  to be extended to November 13th and 15th that class

21  counsel not make those fillings in the bankruptcy

22  proceeding or against Ms Martorello in her actions

23  here in the EDVA until after that point.

24      THE COURT:  Why?

25      MR. JACKSON:  It is in the agreement that class

1   counsel promised they would not.

2        THE COURT:  What are you talking about?  Let me

3   see what you are talking about.

4        MR. JACKSON:  Certainly.  This is section

5   eleven on page 36 of the settlement agreement.

6        THE COURT:  652 dash 1?

7        MR. JACKSON:  Yes, Your Honor.

8        THE COURT:  Just a minute.  What paragraph is

9   it?

10        MR. JACKSON:  It is going to be --

11        THE COURT:  What page?  What paragraph am I

12   talking about?

13        MR. JACKSON:  Page 37.  It is eleven point five

14   and and eleven point six.

15        THE COURT:  Just a minute.

16        Well, I don't -- I don't understand that that

17   has anything to do with what we are talking about

18   doing here.  How would that -- all we are doing is

19   asking the bankruptcy court for its view on whether

20   the matters that need to be proceeded with here

21   respecting pending matters on the transfer of assets

22   would continue and how they would be dealt with.  I

23   don't understand those paragraphs to constitute an

24   agreement not to do anything.  How does that -- I

25   don't understand that.  How does that language work

1   that way?

2      MR. JACKSON:  I interpret that to mean that an

3   assurance from both parties that we wouldn't file

4   anything, or create any work for anybody to respond

5   to on those motions or to produce those motions in

6   the first place.

7      THE COURT:  Well, it doesn't say that, and

8   beyond that it has been overtaken by events.  The

9   filing of the bankruptcy that Mr. Martorello filed

10  render it necessary for the things that I am talking

11  about here to get done to get done so that we can,

12  the bankruptcy that he filed that was after this

13  document, nobody knew about.  So it can't -- that

14  provision, these provisions can't be in

15  contemplation of his filing the bankruptcy.  I don't

16  think that applies, eleven point five or eleven

17  point six.  So file them and get to work.

18     MR. JACKSON:  At the very least, Your Honor, we

19  ask that class counsel hold off on filing the motion

20  against Ms Martorello until after that time.

21     THE COURT:  Why?  I want them here to be

22  decided.  If you want time to -- I mean, what are

23  you trying to accomplish?  It doesn't make any --

24  looks like it just delay.  So I know that is not

25  what you have in mind, so tell me why you have this

1   problem.  Is it spending money?

2       MR. JACKSON:  At the very least, Your Honor,

3   the settlement agreement does that the proceedings

4   in the EDVA should be stayed during the pendency of

5   the settlement agreement proceedings.

6       THE COURT:  Upon the assumption that it was

7   proceeding.  And all of the assumptions upon which

8   that was operating, that stay operated has

9   dissipated into the ether by virtue of

10  Mr. Martorello's bankruptcy.  And we need to make

11  sure that these proceedings may proceed

12  notwithstanding his bankruptcy.  So I am not -- I am

13  going to ask them to go on and file them.  I don't

14  think that eleven point five and eleven point six

15  have anything to do with the filings that need to be

16  made by virtue of Mr. Martorello's bankruptcy, which

17  has impeded the progress of this settlement.  And

18  that changed circumstances necessitate that The

19  Court get the matter appropriately back on track so

20  that it can be dealt with and accord all parties the

21  rights to which they are entitled under the law.

22  Otherwise, nothing happens in the case, as I

23  understand it.

24      All right?

25      MR. JACKSON:  Yes, Your Honor.

1          THE COURT:  All right.

2          Anything else anybody needs?

3          MS KELLY:  Judge, the only thing for plaintiffs

4    is I just wanted to represent there were eight

5    exclusions to the settlement, the first question of

6    the day --

7          THE COURT:  The what?

8          MS KELLY:  -- to the settlement, the first

9    question of the day was you asked how many

10   exclusions.

11         THE COURT:  Opt outs.

12         MS KELLY:  Yes, I am sorry.  Opt outs.  That is

13   ECF 674 dash 1.  And the exclusions are attached to

14   the declaration.  So there were eight.

15         THE COURT:  The objection is what is it, ECF

16   what?

17         MS KELLY:  It was 672.  ECF 672 is the

18   objection.

19         THE COURT:  In which case?

20         MS KELLY:  In 3:19, and 3:14.

21         THE COURT:  All right.

22         I think that takes care of it for now.

23         Thank you very much.  We will be in recess.

24         The foregoing is a true and correct transcript.

25              GILBERT F. HALASZ, OCR
              Official Court Reporter