| | |
|---|---|
| Daniel P. Winikka (State Bar No. 00794873)<br>**WINIKKA LAW PLLC**<br>6060 N. Central Expressway, Suite 500<br>Dallas, TX 75206<br>Phone: 469-384-7710<br>Facsimile 469-384-7709<br>dan@danwinlaw.com<br><br>COUNSEL FOR DEBTOR IN POSSESSION | Craig F. Simon (State Bar No. 00784968)<br>**MEADOWS COLLIER REED COUSINS**<br>**CROUCH & UNGERMAN LLP**<br>901 Main Street, Suite 3700<br>Dallas, TX 75202<br>Phone:  214-744-3700<br>Facsimile:  (214) 292-2356<br>csimon@meadowscollier.com<br><br>PROPOSED CO-COUNSEL FOR<br>DEBTOR IN POSSESSION |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re | § § § | Chapter 11 |
| MATTHEW BRANDON MARTORELLO, | § § § | Case No. 24-90016-mxm-11 |
| Debtor. | § § § § | |

**DEBTOR'S MOTION FOR AN ORDER MODIFYING THE**
**AUTOMATIC STAY TO PERMIT THE U.S. COURT OF APPEALS FOR THE**
**FOURTH CIRCUIT TO PROCEED WITH ADJUDICATION OF APPEAL**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT ELDON B. MAHON U.S. COURTHOUSE 501 W. 10TH ST., RM 147, FORTH WORTH, TX 76101-3643 BEFORE CLOSE OF BUSINESS ON DECEMBER 2, 2024, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

**A PRELIMINARY HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 4, 2024, AT 9:30 A.M. ROOM 128, U.S COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102.**

> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MULLIN'S HOME PAGE. THE MEETING CODE IS 474 603 746. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

Matthew Brandon Martorello, the above-captioned debtor in possession (the "Debtor"), files this *Motion for an Order Modifying the Automatic Stay to Permit the U.S. Court of Appeals for the Fourth Circuit to Proceed with Adjudication of Appeal* (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334(b). This Court can hear and determine this matter in accordance with 28 U.S.C. § 157 and the standing order of reference of bankruptcy cases and proceedings in this District. This matter is a core proceeding, and venue for this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

2. On September 20, 2024, the Debtor filed his voluntary petition for relief in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. The Debtor remains in possession of his property as a debtor in possession pursuant to section 1107 of the Bankruptcy Code.

4. No creditors' committee, examiner or trustee has been appointed in this case.

5. The Debtor is an "affiliate" of Eventide Credit Acquisitions, LLC ("Eventide"), a debtor in possession in this Court (Case No. 23-90007-mxm-11), because he indirectly owns or controls more than 20% of its voting member interests.

2

## RELEVANT FACTS

6. As set forth in Debtor's Statement Regarding Commencement of Chapter 11 Case (DKT 6), this chapter 11 proceeding was necessitated, in part, to provide closure with regards to claims brought by (or which may be brought by) consumers across the country. Those consumers obtained loans from a federally recognized Indian tribe – the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD" or the "Tribe") – and allege that the Debtor's support thereof constituted a violation of state usury laws, and in turn other state laws and therefore the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

7. The Debtor filed this case in part intending (if necessary) to provide one centralized forum in which to adjudicate the consumer claims, alongside Eventide, where claims from numerous states have already been filed and where Eventide has filed a thorough claim objection in response. This Court provides all claimant borrowers (and all other creditors) both efficiency and a level playing field. The Debtor also filed this case to expeditiously address certain substantial IRS tax penalties, the filing of a frivolous lawsuit against the Debtor in tribal court, and to ensure his fresh start—through possible findings or other actions to address any potential *perpetual* liability that the Debtor is alleged to have for the Tribe's lending after the period covered by the currently pending lawsuits.

*The Consumer Borrower Litigation and Global Settlement*

8. Beginning in 2017, consumer lawsuits began to be filed against the Debtor. Lawsuits were filed against the Debtor in federal courts beginning on June 22, 2017 and through 2023, in Oregon, Massachusetts, Georgia, Illinois, Indiana, two lawsuits in California and two

lawsuits in Virginia. While five of the lawsuits were dismissed early on, the others are pending.[1]

9. The first case, Civil Action No. 3:17-cv-00461 styled *Williams v. Big Picture Loans, et al.)* (the "Williams Action"), was filed in the Eastern District of Virginia (Virginia borrowers constitute about 3% of the Tribe's borrowers nationwide). The Debtor is the only remaining defendant. The consumers in the Williams Action (the "Virginia Judgment Class") are a subset of Virginia consumers who borrowed from the Tribe between June 22, 2013 and December 20, 2019. Two additional lawsuits were also subsequently filed in the Eastern District of Virginia. One in 2018 where the Debtor is also the only remaining defendant, and one in 2019 that named (among others) Eventide and, in a tactic subsequently admitted not to be about the merits but rather to increase pressure on the Debtor, the Debtor's wife Rebecca.

10. For the same reasons articulated in Eventide's statement of position (Docket 15 in Eventide case), the Debtor disputes that any of the consumer borrower plaintiffs have valid claims. This is particularly so because he consulted with the country's most prominent attorneys in Federal Indian law who established the entire arrangement between LVD and entities that the Debtor controlled and that would provide services to assist LVD's lending business, as well as the LVD lending code and the borrower facing disclosures, documents and contracts, and then repeatedly (and correctly) opined on the legality of LVD's loans. Their opinion regarding the legality of LVD's loans was conveyed to the Debtor, asserted in dozens of letters to various regulators who contested the application of tribal law, and the legal predicate of the opinion was openly published in nationwide publications and reports to federal agencies and lawmakers. (*Id. at* Exhibit A). Every action the Debtor took with respect to LVD's lending businesses (mischaracterized as it may be) fell within four corners of the servicing agreement and loan documents established and

---

[1] Should the remaining claims be valid, then consumers in dozens of additional states could also have claims.

opined to be legal by highly esteemed counsel.

11. Nonetheless, on June 8, 2023, the federal district court in Virginia ruled on summary judgment that Virginia law applies to LVD's loans.[2] The Virginia district court further ruled on June 16, 2023, that (i) "persons engaged in the enterprise collected unlawful debts"; (ii) "there is no willfulness element for a civil cause of action under 18 U.S.C. §§ 1962 (c) – (d) of RICO";[3] and (iii) a good faith defense is not available under RICO and the Debtor need not know of the loans' illegality to establish a RICO violation. Finally, on June 26, 2023, the Virginia court ruled that liability does not require proof that the defendant controlled the enterprise.[4]

12. On June 30, 2023, reserving all rights to appeal those rulings, which the Debtor believes are erroneous, and with the only remaining issue being whether or not the Debtor was associated-in-fact with an enterprise, so as to avoid a wasteful trial and obtain appellate review as quickly as possible, the Debtor stipulated that according to the Virginia court's rulings at that time, he was "associated with an association-in-fact enterprise" and therefore liable. On July 10, 2023, the Debtor and the plaintiffs stipulated that the judgment in that case equated to the trebling of all interest that LVD had ever collected in interest payments from Virginia borrowers during the class period, *less* Virginia's unlicensed usury cap of 12%, which amounted to $43 million.[5]

13. The Debtor appealed the judgment to the U.S. Court of Appeals for the Fourth

---

[2] The determination of applicable law had nothing to do with the Debtor, nor his role with the Tribe, facts which remain to this day highly disputed. The only undisputed fact that the court found mattered was that the consumer borrower was physically located in Virginia.

[3] On August 15, 2023, the Virginia court entered a new order stating that its ruling that "'[t]here is no willfulness element for a civil cause of action under 18 U.S.C. §§ 1962(c)- (d)' is overly broad and thus is erroneous" and vacated the order for a new order that omitted that holding.

[4] Because the court found such facts irrelevant, disputed facts about control of Big Picture Loans ("BPL") (*i.e.,* including allegatioins the Debtor was "de facto head" of BPL), purpose, intent and who did what where never went to trial and remain highly disputed between the parties and *still* unresolved.

[5] As for liability for any potential state usury claims, those laws simply do not extend to officers of vendors or financiers of a lender.

Circuit in September 2023. The Debtor's source of income to continue to defend himself, however, was cut off in September 2023 when the Tribe stopping making payments it owed to Eventide.

14. By early 2024, it became evident that the Debtor could not continue to defend himself in multiple jurisdictions and hold everything at bay until the Fourth Circuit ruled. Accordingly, even though the Debtor strongly believed that he would prevail in his appeal, he began discussions with class counsel regarding a possible settlement that would (a) include not just the borrowers in Virginia, which constituted only about 3% of LVD's borrowers nationwide, but all the Tribe's borrowers nationwide through May 1, 2024; and (b) help him avoid a personal bankruptcy filing.

15. To that end, after months of negotiations, the Debtor agreed to a contingent, global class settlement (the "Global Settlement") relating to his potential liability to consumers nationwide that obtained loans from the Tribe through May 1, 2024. The Global Settlement, if it could have been consummated, would have resolved (i) the Debtor's potential liability to a nationwide class of consumer borrowers through that date and (ii) vacate the existing $43 million judgment that is on appeal. The Global Settlement would also have resolved Eventide's potential liability and the Debtor's wife's alleged liability to the same nationwide class of borrowers.[6]

---

[6] In the Global Settlement, the plaintiffs "stipulate[d] and agree[d]" that "Defendant Rebecca Martorello resigned from Bellicose in 2013 and never had any substantive or non-ministerial role in that company, Eventide, their management companies, or, more broadly, the tribal-lending servicing industry . . . [and further . . .] that Rebecca Martorello: (1) had no control over, influence on, or involvement with Big Picture's or Red Rock's loan terms, agreements, processes, or operations; (2) she had no role in either Big Picture's or Red Rock's lending operations; and (3) she had no involvement, directly or indirectly, in issuing, servicing, or collecting on any of Plaintiffs' or other Settlement Class members' loans."

The Debtor's wife has persistently been used by the Virginia plaintiffs as a pawn to extort their desired outcomes from either the Debtor or from trustees over trusts in which she is a beneficiary. After the Debtor's filing, those efforts began to ramp up in Virginia. Rebecca simply could no longer continue to handle the emotional burden and suffering that those efforts have caused her. After failing to mediate her liability separately on November 13, 2024, Rebecca made one final request that the Virgina plaintiffs stay the case against her while the Debtor's appeal was pending, so that she could avoid the need to file for

16. The Global Settlement was conditioned upon the ability to sell up to 50% of certain shares in a private company at the plaintiffs' required price by the plaintiff's required deadline (October 21, 2024). An investment bank was retained to run a marketing process for the sale of those shares. The Global Settlement required that the settlement be funded no later than October 21, 2024 and that if closing did not occur by that date, the Global Settlement "shall be void and all Actions shall proceed." The Global Settlement provided that this deadline was subject to extension "if mutually agreed upon in writing by the parties."

17. The Global Settlement contemplated a stay of all proceedings and required the parties to "jointly move for a stay of the Actions and their placement in abeyance, except that the Eventide bankruptcy proceeding, In Re: Eventide Credit Acquisitions, LLC, Case No. 9:23-bk-900007 (Bankr. N.D. Tex.), and the BWH Texas bankruptcy proceeding. In Re: BWH Texas, LLC, Case No. 4:23-bk-43085 (Bankr. N.D. Tex.), will move forward as they relate to all matters other than the consumer borrowers' proofs of claim." The pending appeal to the Fourth Circuit was one of the Actions to be stayed while the parties waited to see if the Global Settlement could be funded in the required amount and by October 21, 2024.

18. At the time the Debtor commenced this case, the Debtor had no real on-going obligations under the Global Settlement beyond ministerial acts. The parties were simply waiting on bids to see if the settlement would be funded. The Debtor was willing to continue to adhere to the deal if it could be funded as required from the sale process for up to 50% of the shares. And the Debtor expected bids for the sale of the shares would be submitted by early October.

19. After seeing the Debtor's Suggestion of Bankruptcy that was filed on September

---

bankruptcy. Though this would provide efficiency to all parties and could eliminate any possibility of her having any liability to litigate at all, the Virginia plaintiffs rejected her request.

7

20, 2024, the Virginia district court set a telephonic conference for September 24, 2024. At that telephonic conference, the parties informed the district court that bids were expected in early October. The district court set another status conference for October 9, 2024, based on the understanding at the first conference that bids would likely come in before that date.

20. On October 1, the Debtor and counsel for the plaintiffs learned that the investment bankers had established an October 16 (close of business) deadline for the submission of preliminary indications of interest. Prior to the October 9 conference, counsel for the plaintiffs informed the Debtor that they would not agree to extend the deadlines in the settlement agreement unless the Debtor and the Texas trustee would agree to remove a key provision from the settlement agreement that the Debtor had negotiated and included to ensure the financial reasonability of the final settlement amount (a cap on the amount of equity to be sold at 50%). At the October 9, 2024 conference, the Debtor clarified that he was not willing to remove that heavily negotiated protection to extend the deadlines. The parties also informed the Virginia district court that bids (or preliminary indications of interest) were due by the close of business on October 16.

21. The Virginia district court then ordered an in-person mediation conference in Richmond, Virginia with Magistrate Colombell for 2:00 p.m. on October 17 and a hearing on October 18 if necessary. The Virginia district court further ordered the Debtor's litigation counsel to appear in person and the Debtor's wife Rebecca and her counsel to appear in person.

22. The evening of October 16, the Debtor learned and shared with the plaintiffs' counsel that no indications of interest had been received, but that the diligence process was continuing with numerous potentially interested parties. On October 17 in connection with a mediation conference in Virginia (a conference in which the Debtor and his bankruptcy counsel participated extensively by telephone) and on the morning of October 18 prior to the October 18

8

hearing, the Debtor and counsel for the plaintiffs engaged in discussions about extending the settlement deadlines. The plaintiffs' counsel continued to demand alteration of the 50% cap on the shares. The Debtor was amenable to extending the deadlines but not to altering the economic deal. The Debtor also informed plaintiffs' counsel that, due to the significant costs associated with the prior conferences (conferences before any bids had even been received), the Debtor would agree to extend the deadlines only on the condition that there be no further mediation conferences in Virginia that the Debtor would be required to participate in unless there is a bid that is either sufficient to satisfy the required amount in the settlement or an amount that plaintiffs' would accept without any additional consideration.

23. Although the plaintiffs' counsel would not agree to those conditions, at a hearing on October 18, 2024, the district court in Virginia ordered that the funding deadline in the Global Settlement be extended to November 13, 2024.[7] On November 1, 2024, the parties received an update from the investment banker, which suggested that it was highly unlikely that the plaintiffs' required price could be achieved if the deadlines were further extended.

24. The parties did not agree on any extension of the November 13 deadline, and the Global Settlement became void on November 14, 2024, to the extent it had not become void prior to that date.

25. Because the Global Settlement is now void, the Debtor desires that the Fourth Circuit Court of Appeals proceed with oral argument and a ruling on his appeal. As noted above, the appeal was fully briefed prior to the Petition Date, but no oral argument was scheduled because the parties had notified the Fourth Circuit that the parties desired to stay the appeal pending possible consummation of the Global Settlement. The law firm of Holland & Knight LLP

---

[7] The Debtor reserves all rights as to whether that extension was even effective.

9

represents the Debtor in the appeal and prior to the Petition Date was paid all fees for representing the Debtor at oral argument. The Debtor will file a retention application for Holland & Knight, but Holland & Knight will not be seeking compensation or reimbursement of expenses from the Debtor's estate for its work relating to the appeal.

## BASIS FOR RELIEF

26. The automatic stay of section 362(a) of the Bankruptcy Code becomes effective upon the commencement of a debtor's bankruptcy case.[8] The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't. of Envtl. Prot.*, 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986) (citation omitted). Its purpose is to give the Debtor a breathing spell and a chance for a fresh start. *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 301 (5th Cir. 2005).

27. The automatic stay of section 362(a) of the Bankruptcy Code operates as a stay, applicable to all entities, of . . . "[t]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . .".

28. The Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the Court shall grant relief from a stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay — (1) for cause." 11 U.S.C. § 362(d). The Bankruptcy Code does not define what constitutes "cause" under Section

---

[8] *In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 266 (Bankr. N.D. Tex. 2002) (Lynn, J.). (citing, 3 COLLIER ON BANKRUPTCY ¶ 362.02 (15th ed. rev. 2002) ("The stay is effective automatically upon the filing of a bankruptcy petition….")).

362(d). Courts, therefore, must determine cause on a case-by-case basis. Matter of Reitnaner, 152 F.3d 341, 343 n.4 (5th Cir. 1998) (citing Robbins v. Robbins, 964 F.2d 342, 345 (4th Cir. 1992)).

29. Even though the automatic stay is a protection for the Debtor and the Debtor desires for the Fourth Circuit to proceed with oral argument and a ruling, the automatic stay is also a protection that benefits the Debtor's creditors. Here, there is clearly ample cause to modify the automatic stay because the appeal will likely determine the validity of the existing judgment against the Debtor and will result in a ruling that has preclusive effect on the claims against the Debtor of Virginia borrowers outside the Virginia borrower judgment class as well.

30. The pending Fourth Circuit appeal raises three fundamental issues. First, that internet loans made by an arm of an Indian tribe on its reservation are governed by tribal law not the law of the borrower's state. Success on this issue would result in the judgment being vacated and all three Virginia lawsuits being dismissed. Second, that the case should be dismissed under Fed. R. Civ. P. 19(b) because the tribal lender and its tribe are required parties who have sovereign immunity and cannot be joined. Success on this issue would likewise result in the judgment being vacated and the three Virginia lawsuits being dismissed. Third, that a RICO violation for collection of an unlawful debt requires proof that the defendant knew that the debt was unlawful and that the rate charged was at least twice the legally enforceable rate. Success on this issue would result in the judgment being vacated and the case being remanded for determination on scienter. To be clear, in the event of such a remand, the Debtor is not requesting, and would oppose, any relief from the automatic stay for any proceedings on remand. If the Debtor's liability under RICO requires a determination of his scienter, that is an issue this Court will likely be required to adjudicate (or may already have) in any event in connection with the adjudication of objections to the claims of consumer borrowers against the Debtor as well as Eventide, BWH

Texas LLC and the Debtor's wife Rebecca, all of which can be done in a centralized and efficient forum as is one of the fundamental purposes for a bankruptcy collective proceeding.

31. Given that the relief sought herein should be uncontroversial and the significant effect that the Fourth Circuit's ruling could have on the existing judgment and thus the Debtor's bankruptcy case, the Debtor requests waiver of the 14-day stay otherwise applicable under Federal Rule of Bankruptcy Procedure 4001(a)(3).

WHEREFORE, for all the foregoing reasons, the Debtor requests that the Court enter an order, in the form of the proposed order attached hereto as Exhibit A, (i) modifying the automatic stay to permit the Fourth Circuit to proceed with adjudication of the appeal; and (ii) granting the Debtor such other and further relief as the Court deems just and appropriate.

DATED: November 15, 2024

Respectfully submitted,

*/s/ Daniel P. Winikka*
Daniel P. Winikka (TX 00794873)
**WINIKKA LAW, PLLC**
6060 North Central Expressway, Suite 500
Dallas, TX 75206
Telephone: (469) 384-7710
Facsimile: (469) 384-7709
dan@danwinlaw.com

**COUNSEL FOR DEBTOR IN POSSESSION**

*/s/ Craig F. Simon*
Craig F. Simon (TX 00784968)
**MEADOWS COLLIER REED COUSINS CROUCH & UNGERMAN LLP**
901 Main St., Suite 3700
Dallas, TX 75202
Telephone: (214) 744-3700
Facsimile: (214) 292-2356
csimon@meadowscollier.com

**PROPOSED CO-COUNSEL FOR DEBTOR IN POSSESSION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of November, he caused to be served a true and correct copy of this Motion for an Order Modifying the Automatic Stay to Permit the U.S. Court of Appeals for the Fourth Circuit to Proceed with Adjudication of Appeal by (i) electronically filing it with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system; and (ii) by first class mail, postage prepaid, to the creditors on the Debtor's top 20 list and the U.S. Trustee.

*/s/ Daniel P. Winikka*
Daniel P. Winikka